KIRBY, Plaintiff in Error, v. JOHNSON, Defendant in Error.

1. A contract was made for the sale of cattle in the field of the seller. The purchaser told the seller to keep the cattle and feed them until he sent for them, at the expense of the purchaser. The seller agreed to do so, but told the purchaser that, if any of them died, he must bear the loss, to which the latter assented. *Held*, no delivery to take the contract out of the statute of fraud.

### *Error to Jackson Circuit Court.*

The facts appear in the opinion of the court.

*Napton*, for plaintiff in error, insisted that there was a sufficient delivery to take the contract out of the statute, and cited Elmore v. Stone, 1 Taunt. 457; Chaplin v. Rogers, 1 East. 192; 11 Johns. Rep. 284.

*Reid*, for defendant in error, cited Shindler v. Houston, 1 Comstock, 661.

RYLAND, Judge, delivered the opinion of the court.

The only question in this case is, whether the contract between the parties is within the statute of frauds and perjuries or not.

The facts of the case are as follows: The plaintiff was buying cattle for California, and being at defendant's house, he went with the defendant to look at some cattle in the defendant's pasture. They were unable to agree as to the price of the lot, but traded for four yoke of oxen, at the price of forty dollars per yoke. Plaintiff told defendant that he had not the money with him; but if the defendant would go home with him, or would go back to town with him, he would pay him. Defendant replied that it did not matter about the money: he could pay it when he came for the cattle, which would suit as well. Plaintiff then told defendant that he was not prepared to drive the cattle away, and requested defendant to keep them for him until he sent for them, and to feed them, as he wished

them well fed, for which he would pay him well. The defendant agreed to do so. The oxen were not removed from the pasture : the contract was not reduced to writing ; nor was any money paid. After plaintiff had started to leave, defendant called to him and said, "remember, if any of the cattle die, they die yours, and you must bear the loss." To which plaintiff replied, "certainly." The defendant sold the cattle the next day, for fifty dollars per yoke, to another purchaser.

The suit is to recover the forty dollars, the difference in the price. It was originally brought before a justice of the peace, in whose court the plaintiff obtained judgment. The defendant appealed to the Circuit Court, where, on trial, the defendant had judgment ; that court holding, that the contract was within the statute of frauds, and that the plaintiff was not entitled to recover.

The plaintiff brings the case here by writ of error, and contends that the contract was not within the statute of frauds, as the facts show there was a sufficient delivery to take it out of the statute, and he relies upon the cases of Elmore v. Stone, 1 Taunt. Rep. 457 ; Chaplin v. Rogers, 1 East. 192, and Vincent v. Germonds, 11 Johns. Rep. 284.

The defendant in error, on the other hand, contends that the facts show the contract to be clearly within the statute of frauds ; that delivery and acceptance must be evidenced by some act of the parties, and that no mere words, however significant, are sufficient ; and he relies upon the case of Shindler v. Houston, (1 Comst. Rep. 261.)

Our statute of frauds and perjuries, § 6, declares that "no contract for the sale of goods, wares and merchandise, for the price of thirty dollars or upwards, shall be allowed to be good, except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged with such contract, or their agents lawfully authorized." This is, substantially, the 17th section

of the English statute of frauds and perjuries, (29 Charles II.) The English statute fixes the price of the goods at ten pounds or upwards ; our statute at thirty dollars or upwards ; in other respects the two sections are almost literally the same. Although the statute of frauds and the statute of limitations were both so much objected to at the time when they were passed that the English judges appeared anxious to get them off the statute book, yet, in later times, the judges have become desirous of giving to these statutes their full effect. (Proctor v. Jones, 2 Car. & Payn. Rep. 532—remarks of Best, chief justice.) " It has been said that the English statute of frauds and perjuries (29 Car. II, c. 3) carries its influence through the whole body of our civil jurisprudence, and is, in many respects, the most comprehensive, salutary, and important legislative regulation on record, affecting the security of private rights. (2 Kent's Comm., p. 647, note d.) I concur in ascribing to this statute all that has been said in its praise by the American commentator. To make the contract of sale valid, under this statute, there must be a delivery or tender of it, or payment or tender of it, or earnest given, or a memorandum in writing, signed by the party to be charged ; and if nothing of the kind takes place, it is no contract." (2 Kent's Comm. 647, 494.)

It may not be amiss to examine some of the cases on the subject, as decided by the English, and also by the American courts.

In Baldry and others v. Parker, 2 Barn. & Cres. 37, (9 Eng. C. L. R. 16,) Abbott, chief justice, said : " We have have given our opinion upon more than one occasion, that the 29 Car. II, c. 3, is a highly beneficial and remedial statute. We are, therefore, bound so to construe it as to further the object and intention of the legislature, which was the prevention of fraud." It appeared from the facts in this case, that the defendant went into the plaintiff's shop and bargained for various articles. Some were severed from a larger bulk, and some he marked in order to satisfy himself that the same were after-

wards sent home to him. A separate price for each article was agreed upon. The defendant desired that an account for the whole might be sent to his house, and then he left the plaintiff's shop ; a bill of parcels was accordingly sent, together with the goods, when the defendant refused to accept them ; the court held that there was no delivery and acceptance of the goods, so as to take the case out of the operation of the statute of frauds. Bayley, Judge, said : "The buyer can not be considered to have actually received the goods, when they have remained from first to last in possession of the seller." Holroyd, Judge, said, " As long as the seller preserves his control over the goods, so as to retain his lien, he prevents the vendee from accepting and receiving them as his own, within the meaning of the statute." Best, Judge, said, " It was formerly considered that a delivery of the goods by the seller, was sufficient to take a case out of the statute, (that is, the 17th section) ; but it is now clearly settled that there must be an acceptance by the buyer, as well as a delivery by the seller. The statute enacts that, where the bargain is for something to the value of ten pounds, it shall not bind, unless something unequivocal has been done to show that the contract is complete." Abbott, chief justice, said, " If we held that such a transfer and acceptance were complete in this case, it would seem to follow, as a necessary consequence, that the vendee might maintain trover without paying for the goods, and leave the vendor to his action for the price. Such a doctrine would be highly injurious to trade, and it is satisfactory to find that the law warrants us in saying, that this transaction had no such effect." In the case of Phillips v. Bristolli, 2 Barns. & Cress. 511, (9 Eng. C. L. R. 162,) the facts showed that, by the conditions of a sale by auction, the purchaser was to pay thirty per cent. upon the price, upon being declared the highest bidder, and the residue before the goods were removed ; a lot of jewelry was knocked off to the defendant, as the highest bidder, and delivered to him immediately. After it remained in his hands three or four minutes, he stated that he had been mistaken in the price, and refused to keep it ; no part of the

price had been paid : held, it was a question of fact for the jury whether there had been a delivery by the seller, and an actual acceptance by the buyer, intended by both parties to have the effect of transferring the right of possession from the one to the other. It was said by the court, in this case, that, " in order to satisfy the statute, there must be a delivery of the goods by the vendor, with an intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the vendee, with an intention of taking the goods as owner. It lies upon the plaintiff, in this case, to make out that there was such delivery and acceptance." In Howe v. Palmer, 3 Barn. & Ald. 321, (5 Eng. C. L. R. 303,) it appeared that the vendee verbally agreed at a public market, with the agent of the vendor, to purchase twelve bushels of tares, (then in vendor's possession, constituting a part of a larger quantity in bulk,) to remain in vendor's possession till called for ; and the agent, on his return home, measured the twelve bushels and set them apart for the vendee: the court held that this did not amount to an acceptance by the vendee, so as to take the case out of the 17th section of the statute of frauds. Abbott, chief justice, said in this case, " there has been no note, in writing, of the contract, and there has been nothing given in earnest, or in part payment; unless, therefore, the the buyer has accepted and received a part of the goods so sold, this case is within the statute, and no action can be brought on the verbal contract entered into between the parties. The question is, has the buyer accepted? Now, if he had once accepted, he could not afterwards make any objection, even if it turned out that the tares did not correspond with the sample. But it is clear that he had a right to make any objection at the time when they were tendered to him for acceptance. If the defendant, in this case, had gone to the plaintiff's granary to demand the tares, and upon inspection had discovered that they did not correspond with the sample, it is impossible to say that he might not then have made the objection ; and if so, it is clear that there was no acceptance on his part ; I there-

fore think that this case comes within the words of the statute, to which we ought to give full effect, and not suffer its beneficial provisions to be evaded by subtle distinctions." Bayley, Judge, said, "I think the safest rule to follow is, to adhere closely to the words of the statute." He then commented on the cases of Chaplin v. Rogers, in which the jury thought that there was evidence of an actual acceptance, inasmuch as as the vendee had dealt with the hay as his own; and of Elmore v. Stone, in which the buyer directed expense to be incurred, and the directing of that expense was considered evidence of an acceptance on his part, and then concludes by saying that he doubts the authority of the decision of the case of Elmore v. Stone. In Proctor v. Jones, 2 Carr. & Payne, 532, (12 Eng. C. L. R. 249,) Best, chief justice, said, when the case of Elmore v. Stone was cited by Serjt. Vaughan, "that case has been overruled." The authority of the case of Elmore v. Stone is therefore now much weakened, if not completely overthrown, by the later English decisions. The following were the facts in Elmore v. Stone : The plaintiff, who kept a livery stable and dealt in horses, having demanded one hundred and eighty guineas for a pair of horses, the defendant, after offering a less price, which was rejected, at length sent word that " the horses were his, but that as he had neither servant nor stable, the plaintiff must keep them at livery for him." The plaintiff, upon this, removed them out of his sale stable into another stable ; this was held a sufficient delivery within the statute of frauds. (1 Taunt. Rep. 458.) This decision, in Elmore v. Stone, was nine years after the case of Chaplin v. Rogers had been decided. The facts in Chaplin v. Rogers were, in substance, as follows : The parties being together in the plaintiff's farm yard, the defendant, after some objections and doubts upon the quality of a stack of hay (particularly the inside part) then standing in the yard, agreed to take it at 2s. 6d. per hundred weight. Soon after, the defendant sent a farmer to look at it, whose opinion was unfavorable. But about two months afterwards, another farmer agreed with de-

fendant for the purchase of this hay, still standing untouched in the plaintiff's yard: the defendant told the last farmer (Loft was his name) to go there and ask what condition it was in, saying he had only agreed for it, if it were good. The plaintiff then informed Loft it was in a good state : he agreed to give the defendant 3s. and 9d. per hundred weight for it—the defendant having told him that he had agreed to give the plaintiff 3s. and 6d. for it. Loft, thereupon, brought away thirty-six hundred weight ; but this latter fact was without the knowledge and against the direction of the defendant. The judges agreed that there was sufficient evidence of a delivery to, and acceptance by, the defendant, to leave the matter to the jury ; the jury found for the plaintiff in this case. These two English cases, and the case of Vincent v. B. & J. Germonds, in 11 Johns. 283, are relied upon by the plaintiff in error to reverse the judgment of the court below. We find that the strongest English case for him—Elmore v. Stone—has been overthrown ; that in Chaplin v. Rogers, there was some evidence of delivery and acceptance of the stack of hay. Now, in Vincent v. Germonds, on a sale of cattle, no earnest money was paid, nor any memorandum in writing made, and the cattle were to remain in the possession of the vendor, at the risk of the vendee, until he called for them, and the vendee afterwards came and took away the cattle without saying anything to the vendor : this was held to be a sufficient delivery within the statute of frauds. But this New York case is not like the one now before us. If, in this case, Kirby had gone to Johnson's in a day or so after the bargain, and driven off the cattle, and Johnson had sued for the price, then the cases would have been similar.

In the case of Shindler v. Houston, (1 Comst. Rep. 261,) many of the cases on this subject, both English and American, were examined and reviewed by the court of appeals of New York ; and it was held that, to constitute a delivery and acceptance of goods, such as the statute requires, something more than mere words are necessary. Superadded to the language

of the contract, there must be some *act* of the parties amounting to a transfer of the possession, and an acceptance thereof by the buyer. I concur in the language of Wright, Judge, in this case, in which he says : " I think I may affirm, with safety, that the doctrine is now clearly settled, that there must not only be a delivery by the seller, but an ultimate acceptance of the possession of the goods by the buyer; and that this delivery and acceptance can only be evinced by unequivocal acts, independent of the proof of the contract."

In the case now before us, it can not be pretended that Johnson had parted with his lien upon the cattle for the purchase money. There was no act done after the sale, amounting to a delivery of the oxen by Johnson to Kirby, and an acceptance by Kirby of the oxen from Johnson; that is, there was no delivery by the vendor, with an intention of vesting the right of possession in the vendee; and there was no actual acceptance by the vendee, with the intent of taking possession as owner. If the courts of the country should decide that such facts as appear in evidence in this case are sufficient to take it out of the statute of frauds, then it is difficult to find what will come within that statute. Nay, we had better blot the statute from our books at once, and not fritter away its vitality by constructive deliveries and acceptances.

Judge Scott concurring, the judgment below is affirmed.