LOVELACE, Appellant, v. STEWART, Respondent.

1. Until a sale of personal property is rendered complete by delivery and acceptance, it will remain at the risk of the seller.

*Appeal from Montgomery Circuit Court.*

*T. Vanswearingen*, for appellant.
*Broadhead*, for respondent.

RYLAND, Judge, delivered the opinion of the court.

This is an action for the price of a negro woman and her child, alleged to have been sold by appellant to the respondent. The facts were found, or rather agreed upon, and upon those facts the court below gave judgment for defendant, on the ground that the sale was incomplete and so the risk of the property was with the seller. The negro woman died after the terms were agreed upon, but before the written documents were prepared and executed. The following, being the testimony of a witness sworn in the cause, are the facts agreed upon by the parties, and upon which the case was submitted to the court : "Walter Wallace, being sworn, states, I hired the woman and child of the plaintiff about Christmas, 1853. Whilst I had her at my house in Danville, and during the spring of 1854, the defendant, who also resides in Danville, on our meeting together in the street, asked me if I would become offended if he should purchase the woman of plaintiff. I answered, I would not. Either in that conversation, or during the same evening, I informed him that it was the opinion of my mother, the plaintiff, that she had not an absolute title to the slaves, but a dower right. About a week thereafter the defendant informed me that he had been out to see the plaintiff to purchase the woman, and that plaintiff was of the opinion that she had only a dower title, and would take $1200 for the woman and child. He said he thought it was too much for them, considering the character of

the title. About two months perhaps after this, defendant met me in the street, and said his wife had no help, and asked me whether, if he would hire a certain girl (slave) from Edward Bush (a girl I once before had), I would exchange the woman I had of my mother to him for said girl, he paying me the proper difference in the hire. I told him I would do so. He accordingly hired the girl of Mrs. Bush, and we made the exchange— defendant taking the woman and child belonging to my mother. About this time, witness thinks a short time afterwards, but it may have been previous, defendant requested me to write to Virginia, and procure the record of partition of slaves of my father's estate, and handed me one dollar to pay for copying the record. I accordingly wrote and procured the record, which record showed that the title of my mother was a dower title to the woman. I showed the record to defendant. Several weeks' subsequent to this, defendant remarked to me that he would give $200 if the title was clear to that negro. I remarked to him, rather in a jest at the time, that I would make it good for that sum. Nothing further was said at that time. A few days after this, defendant came to me and said he would give me $100 to guaranty the title of the slaves in case he should purchase them. I accepted the proposition, and told him I would procure the relinquishment of the heirs in this estate, and would give him a guaranty against the interest of those in Virginia. He said then he would give my mother $1000 for the negroes. About one week subsequent to this, my mother came to town, and I informed her that Stewart, the defendant, was willing to pay her $1000 for the slaves, and would give me $100 to warrant the title against the children. She said she was willing to take it. On the same day I think I saw the defendant, and informed him that my mother was in town, and was willing to accept his proposition, and if he wished to purchase, he had better see her. On the same evening, he went down to my house, where my mother was, and there being company present, he said nothing about the matter, but came back the next morning. He remarked to my mother that he had learned she

was willing to take his proposition. She answered that she was. Defendant then asked her what payment would suit her. She answered she was in no hurry for the money provided she was getting interest on the same. He then said he would pay her one half the purchase money the coming Christmas, and one half the following spring, to-wit, the spring of 1855. She said that would suit her. The defendant then took his hat, and starting from the house, turned and remarked, ' Walter,' meaning witness, ' will fix the papers.' I was then preparing to leave town, and replied, I could not do it now, but would do it on the following Monday, this being on Saturday. On Monday following, I had some engagements as school commissioner, and had to go from town; but before going, I wrote a bill of sale to be signed by her, and left it with my wife, requesting her to hand it to my mother. I did not return until towards the close of the week. A short time after my return, the woman was taken sick and died in the possession of defendant. Both the slaves remained in possession of defendant till the death of the mother. No writings were drawn on either side, that witness knows of, except the bill of sale, which was not signed."

From these facts, it is obvious that something yet remained to be done before there was a complete sale of the slaves. The writings were to be prepared and executed. There was no delivery under this agreement of the slaves to defendant; nor was there any acceptance of them by defendant under this agreement. Something yet remained to be done. And during this time the property can not in law be said to have passed out of the seller, and to become vested in the buyer free from the lien of the seller. The difficulty has arisen because the buyer happened to have possession of the slaves under and by virtue of a different. contract; but that, when properly examined, can not alter the effect of this agreement. The buyer depended upon some other act to be done before his title commenced. The seller knew some other act on her part was to be done before the sale was completed. Now the risk of the life

of the slave is upon the seller until, by the full and perfect completion of the agreement, the title has passed out of the seller and vested in the buyer. The doctrine upon this subject has heretofore been laid down by our court, in the case of Kirby v. Johnson, (22 Mo. 354,) in regard to the sale of other personal property. Had a constable levied an execution on the slaves as the property of Stewart, to satisfy some of his creditors, there can be no doubt that Mrs. Lovelace could have retained the title and the lien, because she had never parted with the possession under the agreement, and because other acts remained to be done before the title passed out of her—because, in short, the sale was not completed.

The judgment must be affirmed ; the other judges concurring.