## JOSEPH GANSON et al., Appellants, *vs.* JOHN MADI-GAN.

### APPEAL FROM CIRCUIT COURT, DODGE COUNTY.

Heard July 15.]                    [*Decided July 21, 1859.*

*Delivery of Goods—Goods sold and delivered—Tender—Performances—Instruction—Error.*

In an action to recover for a reaping machine sold and delivered, the court instructed the jury that it was incumbent on the plaintiffs to show that prior to the time fixed for the delivery of one of several reapers to be delivered to D., it was set apart for the defendant, and marked with his name. This instruction was erroneous.

Where M. agreed to receive a reaper, if consigned to D., for him by a given time, and at the time, on inquiry of D., he was told that he was at liberty to take one of several reapers belonging to the consignors in D.'s yard; but M. refused to take any reaper unless there was one consigned to him, and had his name upon it. This was a good offer to deliver the reaper contracted for, and M. was not at liberty to refuse to take it for the reason given.

When the erroneous instruction of a judge to a jury upon a point essential to the plaintiff's recovery, so determines the case against him, as to preclude the consideration by the jury of other questions which might have been found for the defendant; the error is fatal and the judgment must be reversed.

This was an action brought by the appellants against the respondent on the following contract:

" Palmer & Williams' Patent Self-Raking Reaper:—Messrs. Ganson, Huntley, & Co.: You will please manufacture and deliver to the undersigned at Milwaukee, to the care of Wells & Hill; or Dousman & Co., on or before the 1st day of July next, one of the above reapers, for which the undersigned will pay, on delivery of said machine as aforesaid, $50 and storage at the above place of delivery, and freight and charges from          , and on the 1st day of December, 1855, $110.

" Said machine is warranted to be well made, of good materials, and not liable to get out of order with careful usage, and to be capable, with one man and a good team, of cutting

and raking off and laying in gavels for binding, from twelve to twenty acres of grain in a day.

"If upon a fair trial, to be made next harvest, said reaper cannot perform, as specified, the undersigned will store it safely, and deliver it* to Ganson, Huntley, & Co., or their agent, subject to refunding the $50 paid as above. And if the reaper can perform as above represented, the undersigned agrees, when called on by Ganson, Huntley, & Co., or their agent, to execute a note for $110, with interest, payable at my house, on the 1st day of December, 1855.

his<br>
JOHN &#10005; MADIGAN.<br>
mark

"Fox Lake, Dodge Co., Wis., February 7th, 1855."

The complaint averred that the machine was delivered at Dousman & Co.'s, and was well made, not liable to get out of order, and capable, with one man and team, of cutting and raking off, and laying in gavels for binding, from 12 to 20 acres of grain in a day; that he had performed all the conditions to be performed on his part, and that the defendant had refused to pay the $50 or the storage on the machine, and also the $110, or to make the note. The answer of the defendant denied that such a machine as is described in the contract was delivered to Dousman & Co., or to the defendant at any time or place; also, that any such machine had been made and delivered to him; and denying all indebtedness, &c.

On the trial the plaintiffs proved the delivery of the machine to Dousman & Co., in May or June, and also a demand of the pay for the same made on the defendant. That the machine delivered to Dousman & Co., was in all respects a compliance with the warranty in the contract; that all the defendant needed to do, to get his machine, was to call on Dousman & Co., and give his name.

The defendant testified as follows: "I went to Milwaukee and applied to Dousman & Co. for a reaper; they asked me for my name, looked over their books, and said there was a reaper for a man by my name; I asked them to show me the reaper with my name on it, and they said they had not got one with my name on it; that the machines were all piled up in piles; they were not set up; different parts were piled together, belonging to various machines. I went to Milwaukee in July; the fore part of the month; I went to Dousman

& Co.'s for the machine, and they took me into the yard and showed me a number, and told me to take my pick; I told them the machines were too heavy, and asked them if they had any machines of a lighter kind, and they said no. The man who showed them to me said they were all of the same draft and pattern. I asked him if there was any machine with my name on it, and he said no; he told me I could have any machine in the yard, and asked me to pick out one; he asked me to accept of one, and I told him I would not. I was in the yard and looked through them all; I would not take the reaper because it was not sent to me with my name on it. I thought I was not bound to take it; my reaper was to be a *two* horse reaper. I did not take the reaper. They did not select for me a reaper; they said they would pick one out for me, and would load it on my wagon for me if I would take it. I told them I would not have it; that I was to have a two horse reaper, and these were four horse reapers. I can't say when I called for it; it was after the first of July, 1855, I was there, and in the month of July. I did not offer to pay any fifty dollars to Dousman & Co., at that time, and I have never offered to pay fifty dollars for the machine, and have not paid any thing on the order; I never called there but once for the machine, and that was before the harvest of 1855."

The judge then charged the jury as follows: "That the delivery of twenty, or a large number of reapers at Dousman & Co.'s by the plaintiff, without marking each machine with the name of the individual who was to have it, was not a delivery to the defendant; that to make a delivery of the machine to the defendant, Dousman & Co. should have marked it with the defendant's name, or set apart a reaper for him, and separate it from the rest. The marking and setting apart a reaper for the defendant, should have been done on or before the first day of July, 1855; that having one ready to deliver was not a compliance with the contract or order. The contract on which the plaintiffs claimed to recover, was a one-sided contract; that the plaintiffs were not bound by it, and could not be made to deliver the reaper at Dousman & Co.'s, nor to pay the defendant damages for non-compliance with the contract on their part."

The counsel for the plaintiffs requested said judge to charge the jury; "That the offer of Dousman & Co., to select for and deliver to the defendants a reaper, at the time when the defendant called on them, was a compliance with the order on

the part of the plaintiffs, and entitled them to recover. That the defendant was bound to tender or offer to pay the fifty dollars named in the order or contract, and therein agreed to be paid on the delivery of the machine." The said judge refused so to charge, to which the plaintiffs excepted.

The verdict and judgment were for the defendant, and the plaintiffs appealed to this court.

*Conger & Haws,* for the Appellants.

*Smith & Ordway,* for the Respondent.

*By the Court,* PAINE, J. The question presented by the exceptions in this case, is whether the court below was right in instructing the jury ; that it was incumbent on the plaintiffs to show that prior to the first day of July, 1855, one of the reapers delivered to Dousman & Co., was set apart for the defendant, and marked with his name.

We think this instruction was wrong. The order of the defendant called for the delivery of a reaper of the kind described in it, to Wells & Hill, or to Dousman & Co., for him, on or before the 1st day of July, for which he was to pay as proposed. The witness of the plaintiffs testified that such a reaper was delivered to Dousman & Co. for the defendant before that time, and was there for the defendant at that time and afterwards. He also testified that other reapers for different persons, were also delivered to them, but that they were all alike, being the only kind manufactured by the plaintiffs, of the patent called for by the defendant's order.

The defendant testified that he went to Dousman & Co.'s after the first of July, and asked for the reaper. It appeared from their books that they had a reaper for him, but he insisted on being shown one with his name marked on it. They said there was none marked, but that he could select any one from the yard; and they offered to select one for him, to set it up and load it on his wagon, if he would take it. But he

Ganson et al. vs. Madigan.

says he declined to take it, "because it was not sent to him with his name on it." And on this state of facts the court charged the jury that the plaintiffs were bound to show that one of the reapers had been set apart for the defendant, and marked with his name, prior to the first day of July.

This strictness of proof might be required if the case turned upon the point whether title to any specific reaper actually passed to the defendant. If one of them had been levied on as his, or if they had been destroyed, and the question was who was to bear the loss; it might be material to inquire whether any one had actually been set apart, and designated as the machine of the defendant, so as to pass the title. But here the question is different. It is whether the plaintiffs complied with the order of the defendant, and delivered to Dousman & Co. for him, a reaper of the kind specified, before the 1st day of July. Not whether [the title to any particular reaper actually passed, but whether one was furnished for the defendant, according to the order, so that the title would have passed, if he had not refused to take one. And we think that on this question the instruction of the court was erroneous. If one orders of another a horse of a particular description, and the latter brings him two horses, each answering the description, and tells him to take either, is not that a substantial compliance with the contract? Could the latter on such a tender, refuse to take either, and excuse himself for the non-performance of his contract, by saying that the other party had not offered him such a horse as he had ordered? We think not. And so in this case, where a manufacturer of reapers, having orders from various parties, sends enough to fill all the orders to a designated consignee, we think this is a substantial compliance with the contract with each, provided such a machine as he ordered is there ready for him at the appointed time. And to allow a party having so ordered a reaper, to refuse to take

it, because among a number answering the description, no particular one had his name marked on it, is too great a refinement upon technicality to be established as a practical business rule.

That the delivery of a number of machines to Dousman & Co. before the time, so that the defendant could have either of them on calling for it, and complying with the contract on his part, was a good performance on the part of the plaintiffs, may be shown by the analogy to be drawn from the rule as to the tender of money. Thus, ever since *Wade's Case*, 5 Co., 115, it has been settled that a tender of a greater sum than the amount due, is a good tender, if the money offered be of such a kind that the creditor can take out of it the exact amount due, without being compelled to make change. In *Betterbee vs. Davis*, 3 Camp., 70, Le Blanc, J., says: " If I tender a man twenty guineas in the current coin of the realm, this may be a very good tender of fifteen, *for he has only to select so much and restore me the residue.*" So we may say here, with equal reason, that the furnishing of twenty machines, and offering the defendant either of them, was a good compliance with his order, for he had only to take one and leave the residue.

The defendant testified that these reapers were four-horse reapers, and that his was to be a two-horse reaper. But the charge of the court prevented this question from being considered, and defeated the plaintiffs' action, even though every reaper at Dousman & Co.'s was of the precise kind ordered by the defendant. But if they were not of the kind ordered, that question should be fairly determined by the jury or the court, or both, as the case may require. Whether the words, " a team," used in the defendant's order, should be held to designate a two-horse or a four-horse team, or whether a proper construction of them would hold them to mean such a team as was usually required for a reaper of the patent ordered,

are questions which will have to be determined on another trial. Certainly the instruction of the court precluded their being considered in the last.

The judgment must be reversed, and the cause remanded for a new trial.

Dixon, C. J., did not sit at the hearing of this case.