## CHAMBERLAIN VS. DICKEY.

*New trial — Sale.*

1. This court will not set aside a verdict found by a jury on conflicting testimony, upon a question of fact fairly submitted to them under a charge not excepted to by either party, and grant a new trial, on the ground that it is unsupported by the evidence.

2. An agreement, whereby a vendor sells horses to another, and delivers them to him on condition that the purchaser shall pay over to the vendor the first money received on their resale, or, if he does not do so, that they shall be subject to the vendor's order at any time, will have the effect to pass the title to the purchaser, if that was the intention of the parties.

APPEAL from the Circuit Court for *Racine* County.

Action to recover a balance of an account for services rendered and moneys expended by plaintiff in keeping certain horses, alleged to have been owned by defendant, at plaintiff's stables in the city of New York. The complaint sets out the items of the account, both debit and credit. The answer denies generally, and counterclaims an indebtedness from plaintiff to defendant for cash paid and property converted to his own use, charging some of the same items of cash which are credited to defendant in the complaint.

The evidence for plaintiff shows that, in February, 1869, George W. Dickey, a brother of defendant, took certain horses from defendant's stables at Racine, in this state, to the city of New York, and placed them in plaintiff's stables, where they were kept during the period named in plaintiff's account; that the horses were shipped by defendant and his employees, and one of his employees went with and took care of them on the way, and then returned to defendant's service at Racine; that some of the horses were exchanged by G. W. Dickey before he reached New York, and boot-money received by him, which he did not pay over to his brother; that plaintiff paid the freight bill and other items of expense, in good faith; that it was rep-

Chamberlain vs Dickey.

resented to him by G. W. Dickey that he was defendant's agent and authorized to sell and deal with the horses, and incur such expenses as such agent, according to his discretion; that about the 19th of March, 1869, one Houghton appeared in New York with written authority from defendant to take the horses and other property out of the possession of G. W. Dickey, and take charge of and deal with them for defendant's benefit; and that he took possession and exercised the same control over them as his predecessor had done, and his acts were adopted and ratified by defendant, while those of G. W. Dickey, and the liabilities incurred by him, were repudiated.    There were also put in evidence several letters from defendant to plaintiff and another person, recognizing Houghton's authority, and inquiring as to what he was doing, speaking of the property as "my property there," and asking about "property belonging to me, what horses there is, harness, blankets, and how much of a bill of keeping there is on the stock."    G. W. Dickey testified that defendant owned the horses, and sent them to New York for sale, and that he (the witness) was authorized to sell or dispose of them in his discretion.

Defendant testified in his own behalf, to the effect that he originally owned eight horses, five of which he sold to G. W. Dickey, at about one-half their real value, and gave him the other three, under an agreement that the latter should pay him out of the first money he received from the sale of horses, but, if he did not do so, they were all to be subject to his order at any time; and he denied that his brother was his agent, or authorized by him to incur any expense whatever on his account. He also testified that, learning that his brother was squandering money received for horses in New York, he sent on Houghton to take possession for him, as authorized by the contract.    The testimony of the defendant was sustained by that of other witnesses, and by the written memorandum of the contract, made upon defendant's books by one of them.    Evidence of the admissions of G. W. Dickey, that he was the owner of the horses,

and that he used the name of the defendant merely as a cover to screen them from his own creditors, was offered, but excluded by the court.

The property charged for in defendant's counterclaim, consisted of harnesses, blankets, etc., deposited by G. W. Dickey in plaintiff's stable, and taken away by him secretly after Houghton took possession.

The court instructed the jury, in substance, that if G. W. Dickey was the agent of defendant in contracting the indebtedness, the latter would be liable, otherwise not; that they must determine from preponderance of evidence whether he was such agent or not; and that the plaintiff would be chargeable with the value of the property taken away from his stable by G. W. Dickey, if it belonged to the defendant, and was in plaintiff's care and custody, and he failed to use ordinary care and prudence in the management of it, by reason of which it was lost. No exception was taken to the charge.

Verdict for the defendant; motion for a new trial denied ; and the plaintiff appealed from a judgment on the verdict.

*Fuller & Dyer*, for appellant, contended that the evidence shows that an absolute sale was not intended by the parties; that the power and right reserved by the defendant was at all times paramount to that of G. W. Dickey ; and that, the latter having violated the contract before reaching New York, the property thereupon became subject to the defendant's order, and his absolute property ; and he was as liable for the subsequent acts of G. W. Dickey and expenses incurred by him, as his agent, as for those of Houghton. Defendant's acts in sending Houghton to New York, and conferring such authority upon him, and Houghton's acts in taking possession of the property summarily, and in the most authoritative manner, show that the property belonged to defendant. The jury recklessly disregarded their duty, and their verdict should have been set aside as wholly unsupported by the evidence.

*E. O. Hand*, for respondent.

Chamberlain vs. Dickey.

COLE, J. The only question arising upon this record is one of fact upon the evidence.

It is claimed by the counsel for the plaintiff, that the circuit court should have granted the motion for a new trial, for the reason that the verdict was entirely unsupported by the testimony. It is said that the evidence conclusively shows that the horses all the time really belonged to the defendant, and that George W. Dickey was fully authorized, as his agent, to contract the indebtedness disclosed in the plaintiff's account. It seems to me that the weight of testimony does tend to establish those facts; but still it must be admitted that there is considerable evidence in the case, which likewise tends to show that the defendant had sold the horses in question to his brother George, and that the latter, in his dealings with the plaintiff, acted for himself alone, upon his own responsibility. The defendant testified, in substance, that he sold the horses to his brother, and surrendered the possession to him, with the understanding that he was to be paid the first money which George should receive on their resale; and, if not sold by George, then they were to be subject to his order at any time. This is as we understand his account of the transaction, and it is confirmed by the written memorandum of the terms of sale which was made by the witness Dutton. If it was really the intention of the parties that the title to the property should pass to George, so that, if the horses were injured or killed in the transportation to New York, the loss would fall upon him, then this constituted him the owner. It is true, George Dickey testifies that the horses all the time belonged to the defendant, and that he was sent by him to New York with them, for the purpose of selling or disposing of them there for the defendant's benefit. It is very apparent that there is an irreconcilable conflict in the testimony upon the point whether the horses, when shipped at Racine, were really the property of the defendant or George W. Dickey, and whether the latter was employed as agent to dispose of them for the defendant, or whether he was acting for himself alone.

It was the province of the jury to weigh and consider the probabilities of these conflicting statements, and to say which was the better entitled to credit. If George was the owner of the horses, then there is no ground for holding that the indebtedness contracted by him about his own property constitutes a legal liability against the defendant. The jury, under a charge of the court, not excepted to on either side, have passed upon the question of the ownership of the horses before Houghton took possession of them for the defendant, and whether George W. Dickey, in his transactions with the plaintiff, was acting as agent for the defendant or upon his own responsibility. We do not feel warranted in disturbing the verdict upon the state of the testimony disclosed in the record. For we think there is no ground for saying that it is entirely unsupported by the evidence.

*By the Court.*—The judgment of the circuit court is affirmed.

Lyon, J., did not sit in this case.