SOMERS vs. McLAUGHLIN.

*March 15 — April 4, 1883.*

SALE OF CHATTELS. *(1) Statute of frauds: delivery. (2) Instructions to jury.*

1. A present sale of a horse for $80 having been agreed upon, payment to be made at a future time, the vendor gave to the vendee a verbal order upon the person in charge of the horse to let the vendee take it. On the following day the vendee, without disclosing the bargain made with the vendor, took the horse from the person in charge, giving him to understand that he had got the horse from the vendor *on trial.* The vendor had no notice that the vendee pretended to take the horse on trial only. On the same day the vendee returned the horse to the person previously in charge of it. *Held,* that there was a valid sale and delivery of the horse.

2. Where, according to the plaintiff's testimony, there was a valid sale of a chattel under the statute of frauds, and, according to the defendant's testimony, there was not such a sale, it was proper to instruct the jury that if they believed the plaintiff's version he could recover, and that if they believed the defendant's version the plaintiff could not recover; and special instructions as to what must be done, under the statute, to make a valid sale were unnecessary.

APPEAL from the Circuit Court for *Waukesha* County.

Action to recover the purchase price of a horse alleged to have been sold and delivered to the defendant. The facts appear from the opinion. There was a verdict for the plaintiff, and from the judgment entered thereon the defendant appealed.

The cause was submitted for the appellant on the brief of *D. H. Sumner,* and for the respondent on that of *Hurlbut & Van Alstine.*

ORTON, J. The errors complained of on this appeal would seem to be more of fact than of law. The testimony of the plaintiff was, in effect, that about seven o'clock in the evening of the 3d day of May, 1881, the defendant called upon him, at his house in the city of Milwaukee, and said he understood that he had a horse to sell, which was at the

farm of plaintiff's father, in the town of Menomonee, in Waukesha county; that he had seen the mare the day before, and that plaintiff's brother James was plowing with her, and that she suited him; that he had talked with James about buying her, and that he could have bought her of James for $80; that he, plaintiff, told the defendant that he knew but little about the mare, as he had owned her only three days, and requested the defendant to inquire about the mare of a neighbor near by, from whom he had purchased her, which defendant declined to do, saying he did not care about that; that plaintiff first asked $100 for the mare, but consented to take $80, because his brother James had stated that she could be bought for that price; that the defendant thereupon agreed to take her at that price, and offered to give his note for that sum, and the plaintiff waived the giving of the note, and it was agreed that the consideration should be paid in three weeks from that time, and that the defendant should take the mare at Menomonee, where she was in the care of the brother James, and plaintiff gave the defendant a verbal order upon James to let him take the mare away and to give him a strap to lead her away with; that the plaintiff was the sole owner of the mare, and that James had no interest whatever in the property, except to keep her for the plaintiff. Thomas Somers, a brother of the plaintiff, who was present at the interview between the parties at that time and heard all that was said, corroborated the testimony of the plaintiff in every particular.

James Somers testified that between four and five o'clock in the morning of the 4th day of May following, the defendant took the mare away from him without disclosing to him the bargain made with the plaintiff, but gave James to understand that he got her of the plaintiff *on trial*, and asked for the strap to take her home with; that the strap could not be found, and he took a bridle and blanket to ride her with.

The defendant testified substantially like the plaintiff and his brother James as to what took place at the interview in Milwaukee, but that he wanted to take the mare on trial, and that the plaintiff said, " You can take her and hitch her up, but I have no doubt she is all right;" and his testimony as to taking the mare from James was substantially the same as that of James. The defendant brought the mare back to James that same evening about six o'clock, and left her there.

It will be observed that the defendant made no bargain whatever with James in respect to the purchase of the mare, and did not disclose to James the bargain he had made with the plaintiff, and the plaintiff had no notice whatever as to the manner in which the defendant took away the mare from James, or of his pretext that he took her away on trial only. According to the testimony of the defendant of the plaintiff's permission " to take her and hitch her up," it scarcely gave him the right to take the mare away from James, and to his home, for trial; but giving this permission the force claimed for it, the bargain in every other respect was complete, except the delivery of the property, as testified to by the plaintiff and his brother Thomas, and this he did not disclose to James; and on this point he is directly and positively contradicted by them both.

On this statement of the case, the following observations may properly be made and propositions of law laid down:

.1. According to the testimony of the plaintiff, and of Thomas and James Somers, the defendant obtained possession of the property from James upon a fraudulent suppression of the bargain made with the plaintiff.

2. James having no right, so far as it appears, to change or modify the bargain made by the plaintiff with the defendant, and being a mere keeper, and having merely the custody of the property for the plaintiff, the defendant's statement to him that he would take it on trial was nothing more than

a mere *mental* reservation, not disclosed to the plaintiff, which could not qualify the acceptance on the order.

3. His taking the property from James upon the verbal order of the plaintiff, so far as the plaintiff is concerned, was the receiving of it in pursuance of the contract of sale, and a full delivery in completion of the sale. This must be so, or, when a full contract of sale on credit for property in the presence of the parties, and which has been fully inspected by and is satisfactory to the purchaser, has been made, and a present delivery of the property to the purchaser, without qualification, condition, or reservation, has also been made, the sale can be avoided by the purchaser merely intending in his own mind to keep the property *only on trial* and to return it at his pleasure, when the seller knows nothing of such intention or mental reservation. James Somers was a stranger as to the property and the sale, and the disclosure to him of such a mental reservation, was of no more effect, so far as the plaintiff was concerned, than the disclosure in the case supposed to some disinterested bystander of such a reservation. "It is the fact of delivery under and in pursuance of the agreement of sale, *not the time* when the delivery is made, that the statute of frauds renders essential to the proof of a valid contract," so that a delivery at a future day is sufficient if made in pursuance of the contract. *Marsh v. Hyde,* 3 Gray, 331; *Townsend v. Hargraves,* 118 Mass., 336. Upon the same principle, the place of delivery can make no difference.

4. It was the intention of the parties at the time of the sale that a delivery of the mare should take place at Menomonee, not far from Milwaukee, where she then was, in the keeping of James, upon the presentation to James of the order, so that the delivery was complete when the defendant took possession of the mare and drove her away upon such order. The intention of the parties at the time as to the delivery must prevail, even if there be something yet to be

done to complete it. *Sewell v. Eaton*, 6 Wis., 490; *Ganson v. Madigan*, 9 Wis., 146; *Pitts v. Owen*, id., 152; *Cotterill v. Stevens*, 10 Wis., 422; *Sanborn v. Hunt*, id., 437; *Webber v. Roddis*, 22 Wis., 61; *Janvrine v. Maxwell*, 23 Wis., 51; *McConnell v. Hughes*, 29 Wis., 537; *Morrow v. Campbell*, 30 Wis., 90; *Chamberlain v. Dickey*, 31 Wis., 68; *Pike v. Vaughn*, 39 Wis., 499; *Fletcher v. Ingram*, 46 Wis., 191; *Kirby v. Johnson*, 22 Mo., 354; *Henline v. Hall*, 4 Ind., 189; *Gough v. Edelen*, 5 Gill (Md.), 101; *Foster v. Ropes*, 111 Mass., 10.

5. There are many cases which hold the delivery complete between the parties, everything else being done, upon receipt of the order for the delivery of the property when in the keeping of another person and in another place. *Ranney v. Higby*, 4 Wis., 154. See, also, authorities collated in the brief of the counsel in *Magee v. Billingsley*, 3 Ala., 679.

6. It was a fraud upon the plaintiff if the defendant obtained the possession of the mare from James by suppressing the real bargain, and pretending that he had the right to take her on trial. In such a case, if the possession is obtained by fraud, it may be treated by the vendor as a delivery to complete the sale at his option. *Weed v. Page*, 7 Wis., 503.

7. The defendant having obtained the possession of the mare upon the order of the plaintiff as a full completion of the sale according to the understanding of both parties at the time the order was given and accepted, he could not change the effect of such a delivery without notice to the plaintiff, and would be estopped from claiming that he took her only on trial. Any other principle would allow him to take advantage of his own fraud to avoid the bargain.

8. When there is a verbal contract of sale of specific property and the terms fixed, with an order of delivery at a designated place, and it is delivered at such place, it is suf-

ficient, and the acceptance was complete when the bargain was made. *Cusack v. Robinson*, 1 Best & S., 299.

9. When the purchaser takes upon himself to exercise a dominion over the property, and deals with it in a manner inconsistent with the rights of property or the title being in the vendor, that is evidence of its acceptance. *Morton v. Tibbett*, 15 Q. B., 428.

10. When the seller has parted with the absolute title to the property, and reserves no lien upon or control over it, and the purchaser has taken possession of it, *but under an engagement restricting his use or disposition of it*, such *restriction* will not be deemed inconsistent with his having received it so as to conclude the contract. *Dodsley v. Varley*, 12 Adol. & E., 634. See, also, *Mech. & T. Bank v. Farm. & M. Nat. Bank*, 60 N. Y., 40; *Beaumont v. Brengeri*, 5 C. B., 308. To some of these propositions, see, also, Browne on St. of Frauds, § 316*f et seq.*

11. When property in the custody of another has been sold, and everything done to complete the sale except an actual delivery, and an order is given upon the custodian for such delivery, and the purchaser obtains the property on such order, he cannot change or rescind the bargain upon mere notice to the custodian, and the delivery is complete. *Magee v. Billingsley, supra.*

We are satisfied from the authorities, as well as from common reason, that the evidence given on behalf of the plaintiff established a valid sale and delivery of the property, and warranted the verdict.

The circuit court properly instructed the jury that if they believed the plaintiff's version he could recover, and that if they believed the defendant's version the plaintiff could not recover. It was unnecessary to charge the jury specially what is required to be done under the statute of frauds to make a valid sale after this instruction, for the statute of frauds was satisfied according to the plaintiff's

version, and according to the defendant's version there was neither a sale nor delivery. The jury were sufficiently instructed on this point that a delivery of the property was essential, and the question of delivery being mainly a question of fact, because a question of intention, was properly submitted to the jury. There appear to have been no errors of law in the rulings of the court upon the rejection of evidence complained of, or in the instructions.

*By the Court.*— The judgment of the circuit court is affirmed.

TAYLOR, J., dissents.