## GEORGE GRAY V. JOHN PETERSON.

### FILED MAY 8, 1902.  No. 10,095.

#### Commissioner's opinion, Department No. 3.

**Statute of Frauds.** Any distinct and unambiguous act evidencing an intention by the seller to part with the possession and an intention on the part of the buyer to acquire the possession, accompanied by a tradition of the property from the premises of the former or from neutral ground to the premises of the latter, satisfies the statute of frauds and suffices to transfer the title, so that the former may recover the purchase price, if it remains unpaid, and the latter assumes the risk of safe-keeping and may defend his possession against all the world.

ERROR from the district court for Knox county. Tried below before ROBINSON, J. *Reversed.*

*W. R. Ellis,* for plaintiff in error.

*A. A. Welch* and *W. D. Funk, contra.*

AMES, C.

This cause was submitted to the court upon oral argument and brief for the plaintiff in error alone, and his statement of facts, which upon a comparison with the record, appears to be accurate, will be adopted for the purposes of this opinion: Plaintiff was a stock buyer in the village of Bloomfield, Nebraska, and defendant was a stockman residing a few miles from said town. A few days prior to July 18, 1896, plaintiff and defendant had a conversation regarding the latter's forty head of steers then ready for market. Plaintiff, at defendant's request, went out to see the steers once or twice, and finally it was agreed that plaintiff should order cars in which to ship them on a certain day,—July 18th,—and that defendant would drive them in on that day, and, if he did not sell to plaintiff, he would ship them himself in the cars plaintiff ordered. Plaintiff accordingly procured cars, and defendant drove his steers to Bloomfield on the morning

of the day agreed, and placed them in the stock yards of the railroad company, after which he hunted up plaintiff, and the two renewed negotiations, which were finally terminated in an unconditional sale of the forty head of steers by defendant to plaintiff at $3.60 per one hundred pounds. The parties then, in pursuance of the contract, went to the stock yards and proceeded to weigh the steers. The stock yards of the railroad company, in which defendant had placed his steers, consisted of two separate yards and a loading chute, and were constructed of heavy planks, and made extra strong and substantial. The plaintiff had a private yard immediately adjoining the railroad yards on the west, which was constructed of inch boards, and was frail and light as compared to the company's yards, and did not resemble the latter in any particular. An alley extended along the south side of the yards of the railroad company and plaintiff, and in this alley, on the south side of plaintiff's yards, was located the enclosed scales on which the steers were weighed. They were driven out of the stock yards in drafts of two each, and weighed, after which each draft was driven from the scales, and taken by plaintiff and placed in private yard. In this manner, the weighing proceeded until all the steers were weighed and turned over to plaintiff, and by him placed in his yard, the defendant participating in the weighing and delivery of all the steers, and making no objection to the same, or to the plaintiff's taking possession of them, except one casual remark to the effect that he regretted that he had sold the steers. After the weighing and delivery had been completed, plaintiff took about half of the steers, or one car load, from his yard, and drove them into the chute, preparatory to loading into the cars, when defendant for the first time objected, saying the steers had shrunk too much, and that he would ship them himself. Plaintiff protested that the steers were his property; that, if defendant was not satisfied with the weights, he might weigh them over any scales in town, but he would not consent to defendant

rescinding the contract. Defendant made no claim of fraud or improper weighing, but simply stated that the steers had shrunk so much that he could afford to ship them himself on that weight, and he forcibly took possession of the steers and shipped them to and sold them on the same market on which plaintiff would have sold them, and at a net profit of $130 over what plaintiff would have paid for them under the contract, which amount is the measure of damages sued for in this action. It will be noted that plaintiff had made no payment on the steers, but no question was or is raised because of this, and it is expressly stipulated and in evidence "that the said plaintiff had sufficient money on deposit in the Farmers & Merchants' State Bank of Bloomfield, Nebraska, to pay to defendant the amount of the value of the steers described in plaintiff's petition, and it is agreed that no question is to be raised on the trial because of the fact that the plaintiff did not pay to defendant or tender to defendant the amount set forth in said petition as the purchase price of said steers." Upon this state of facts there can be no doubt that the district court erred in supposing that there had not been a sufficient delivery and acceptance of the steers to satisfy the requirements of the statute of frauds. Any distinct and unambiguous act evidencing an intention by the seller to part with the possession, and intention on the part of the buyer to acquire the possession, accompanied by a tradition of the property from the premises of the former, or from neutral ground to the premises of the latter, satisfies the statutes of fraud, and suffices to transfer the title so that the former may recover the purchase price, if it remains unpaid; and the latter assumes the risk of safe-keeping and may defend his possession against all the world. *Wyler v. Rothschild*, 53 Nebr., 566. "The intention of the parties at the time as to the delivery must prevail, even if there be something yet to be done to complete it. *Somers v. McLaughlin*, 57 Wis., 358, 15 N. W. Rep., 442. Correctly speaking, what is required to satisfy the statute of frauds is not the

delivery of the goods by the vendor, but the acceptance of them by the vendee, although, of course, this must be with the consent of the former, and be accompanied in some sense by a delivery; but, after all, the controlling act is that of the buyer. *Powder River Live Stock Co. v. Lamb*, 38 Nebr., 339, and cases cited; Browne, Statute of Frauds, par. 315, *et seq.* This author, after a review of the authorities, says that the rule may be broadly stated that any acts from which it may be inferred that the buyer has taken possession as owner may be regarded as sufficient. But it can not be necessary to pursue the subject further. The circumstances and conversations detailed in the foregoing statement of facts put the question of the acceptance and delivery of the cattle and the intention of the parties, especially of the buyer, beyond controversy.

After the preparation of the foregoing opinion a brief was filed by the defendant in error, and brought to our attention. We have carefully read and considered the same, but do not find that it points out any important error in the foregoing statement of facts, or in the above application of the law thereto. On the contrary, we find in the authorities quoted in the brief a substantial unanimity with this opinion as to the principles governing the question at issue. The principal object of the statute of frauds is the protection of the alleged vendee. If he has accepted and received the goods or a part thereof with the consent of the vendor, the second clause of the statute is satisfied; the title passes, and he becomes bound, although there be no writing or part payment of the purchase price; otherwise not.

It is recommended that the judgment of the district court be reversed, and a new trial awarded.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and a new trial awarded.

REVERSED.