T. F. B. SOTHAM, Respondent, v. ANTON WEBER, Appellant.

**Kansas City Court of Appeals, February 5, 1906.**

1. **SALES: Delivery: Bailment: Statute of Frauds.** The vendor may become the bailor of the vendee, but this should occur after actual delivery by the former and acceptance by the latter without condition, so that the vendee's dominion is unfettered, and without such delivery and acceptance the sale is within the Statute of Frauds, unless there is earnest money put up or the contract is in writing.

2. ____: ____: ____: ____: **Testimony.** Testimony relating to the sale of a steer is held to show the sale was conditional and without delivery and therefore within the statute.

3. ____: ____: **Statute of Frauds: Fraudulent Conveyance.** Distinction between a sufficient delivery under the statute relating to fraudulent conveyances and under the Statute of Frauds is noted.

Appeal from Jackson Circuit Court.—*Hon. Shannon C. Douglass,* Judge.

REVERSED.

*G. B. Silverman* for appellant.

(1) The verdict is against the evidence and was manifestly for the wrong party. 1 Tiedeman on Sales, sec. 56. (2) The Statute of Fraud: page 856, chapter 31, R. S. 1899, sec. 3419; Wood on Statute of Frauds, (1 Ed.), p. 634, note 2, pp. 635-638; Tiedeman on Sales, sec. 69, page 83; Story on Sales, sec. 278; Harvey v. Butcher's Association, 39 Mo. 217; Kirby v. Johnson, 22

Mo. 354; Gro. Co. v. Lamar, 42 S. E. 366; Cardet v. Belknap et al., 1 Cal. 399; Bentall v. Burn, 3 Barn & Gres. 423; Bailey v. Ogden, 3 Johns. 399. (3) The court erred in overruling the demurrer to the evidence offered by the defendant at the close of the plaintiff's case; Powel v. Railroad, 76 Mo. 84, 85; Haven v. Railroad, 155 Mo. 230; Kirby v. Johnson, 22 Mo. 361; Harvey v. Butchers' Association, 39 Mo. 218; Wood on the Statute of Frauds, p. 638.

*Ward, Hadley & Neel* for respondent.

(1) There was an acceptance and receipt of "Old Times" in Kansas City by Weber, on or about October 18, 1900. Garfield v. Paris, 96 U. S. 563; Kirby v. Johnson, 22 Mo. 360; Bass et al. v. Walsh, 39 Mo. 192; Swofford v. Spratt, 93 Mo. App. 630; Janvrin v. Maxwell, 23 Wis. 51, (2) Sotham held "Old Times" after he was accepted and received by Weber in Kansas City, Missouri, October 18, 1900, under the terms of his contract of sale and not simply as bailee as claimed by appellant.

ELLISON, J.—This is an action for the price of a certain beef steer alleged to have been sold and delivered by the plaintiff to the defendant at Kansas City on the 18th day of October 1900. The judgment in the trial court was for the plaintiff. The defense, which we are to consider, is the Statute of Frauds, section 3419, (Revised Statutes 1899) reading as follows: "No contract for the sale of goods, wares and merchandise for the price of thirty dollars or upward, shall be allowed to be good, unless the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged with such contract, or their agents lawfully authorized."

The price, at which the steer was alleged to have been sold, was $1.53 per pound and he weighed fifteen hundred and sixty-four pounds, thus making the price $2,392.92, and it was for that sum plaintiff obtained judgment. The contract was verbal and no earnest money was paid, so we have only to ascertain whether defendant accepted and also actually received the steer.

As the case is to be disposed of on defendant's demurrer to the evidence, we will consider it as developed by the evidence in plaintiff's behalf. Plaintiff testified that he was the owner of the steer called "Old Times" from a calf up to October 18, 1900. That he was a prize steer and that he exhibited him at expositions and live stock shows in Missouri, Illinois, Minnesota and other places, where he had taken various premiums. That, on October 18, 1900, he sold the steer at Kansas City to defendant, who owned and managed a large retail meat market in that city. The plaintiff gave his deposition before the trial and several of his statements at the trial of the detail of the sale and its terms were not consistent with those made in the deposition; but taking the testimony as given by him at the trial, we find that he resided on a farm in Livingston county, Missouri, where he dealt in Hereford cattle and that he brought the steer in controversy to Kansas City in October, 1900, to exhibit at the cattle show at that place, with one of his employees in immediate charge of him. That he had theretofore "entered him" for exhibit at the Stock Exposition, sometimes called Fat Cattle Show, at Chicago, Illinois, which was to be held in December following. That defendant saw the steer while at Kansas City in a stall where plaintiff kept him and desired to purchase him. Plaintiff, at first, refused to sell, telling defendant that he had entered the animal for exhibition at the Chicago show in December and that in consequence he could not sell. That defendant was extremely anxious to buy, as he thought the sale of beef from the carcass of so noted an animal, which had been such a notorious

prize winner, would be an advertisement and add much to his prestige as the keeper of a high class meat market, and he therefore suggested to plaintiff that he thought they could remove palintiff's objections satisfactorily. It was then agreed that defendant was to pay three cents per pound more than the highest price paid for any beef bullock, which should be sold at the Chicago exhibition in the following December. That plaintiff should be allowed to keep the steer, take him back to his farm, feed and care for him and take him to Chicago to the exposition for exhibit alive on foot, and dead as a beef carcass; the premiums, if any, to be plaintiff's. From his testimony, it also appeared that defendant tacked a card on the stall where plaintiff kept the steer with the words, "This beef bought for A. Weber, 1115 Walnut street, Kansas City, Mo." and that, perhaps more than once during the exposition, defendant led the animal out of the stall and showed him to friends as being purchased by him; but that the animal was kept in the stall and remained in charge of plaintiff's employee until he took him back to his farm. He then testified that an animal was sold at auction at the Chicago exposition for $1.50 per pound, thus making the price to defendant $1.53, under the terms of the sale, as stated.

Plaintiff's only contention in avoidance of his act in keeping the possession of the steer for several weeks after the alleged completed sale at Kansas City is on the idea of a bailment, that is to say, that he became, after the sale, the defendant's bailee. It is quite true that it frequently happens that personal property at time of sale is in possession of a third person, as a livery man, agister, warehouseman, and the like, and yet the purchaser may actually receive the property, so as to satisfy the statute, and then permit it to be retained by the party in possession as *his* bailee. And so there is no legal impediment to the vendor himself becoming the purchaser's bailee, where the receipt of the property by the purchaser has been clearly shown. [Tiedeman on

Sales, sec. 69.] But in all such cases (as well as all others), the receipt of the property must have been absolute, and his dominion over it must be absolute. The bailment, to be consistent with the intent and meaning of the state, must be a voluntary bailment made from the free choice of the purchaser. It must be an act in the free exercise of that complete dominion, which he obtains by the receipt.

There was no such element in the alleged bailment in this case. For, by the *contract,* plaintiff imposed upon defendant, at the very least, a limited and qualified dominion; and we have the agreement itself, whereby defendant is said to have received the steer, limiting his control and depriving him of possession. A purchaser must first have actually received unfettered dominion and control, in order to meet the requirement of the statute, before he can make a bailment back to the endorser. If you may hamper his receipt with one condition, you may with any number. The words, accept and actually receive, "are understood to mean a final and absolute appropriation by the purchaser." [Story on Sales, sec. 276.] In order to take the contract from under the operation of the statute, the acts of the parties must be "of such character as to unequivocally place the property within the power and under the exclusive dominion of the buyer" [Marsh v. Rouse, 44 N. Y. 643, 647; Hinchman v. Lincoln, 124 U. S. 38.] The Supreme Court of this State recognized this rule in the case of Kirby v. Johnson, 22 Mo. 354, where a contract for a sale of cattle in the pasture of the vendor, the vendee getting the vendor to keep and feed them at the vendee's expense until he sent for them, and if any died to be the loss of the vendee, was held to be invalid under the statute. And it was also recognized in Harvey v. Butchers' Ass'n, 39 Mo. 217. "The acts of the parties must be, in such a case, wholly unequivocal; and if the vendor retains possession of the subject-matter of sale, it must be under circumstances which expressly show that he

holds it as agent of the other party, and has abandoned all claim to it of any kind:" [Story on Sales, sec. 278.] In the case under consideration, the plaintiff not only did not abandon all claim to the steer, but he testified that the contract of sale was expressly conditioned that he should keep him for show at expositions, and that he should be slaughtered, and that he should exhibit the carcass for premiums. So, it is manifest that the contract of sale, upon which plaintiff relies to sustain his case, contains provisions which leave him without legal right.

But the plaintiff's testimony shows that, in reality, defendant had no dominion whatever over the animal in controversy, limited or unlimited. Cutting out the mere assertion and conclusion of the plaintiff that he sold and delivered the steer at Kansas City and taking what he actually did (for it is his acts and not his words which must control; 1 Mechem on Sales, sec. 383), we find that, in point of fact, he, himself (instead of defendant), retained complete and entire dominion over the steer and never for a moment surrendered it, not only at Kansas City, but up to the time that, under the rules of the exposition company at Chicago, he turned it over to that company for slaughter. It is quite apparent that there was no thought in the mind of either party that the steer was to be delivered or received at Kansas City. Defendant, as plaintiff testified, wanted the animal partly as an advertisement, and he thus pointed it out as having been purchased by him and had his card of advertisement put on the stall. But plaintiff's possession was never in the least disturbed at Kansas City, nor was it to be. The words of the plaintiff in his deposition were, "Mr. Weber agreeing to receive the steer at Chicago." His explanation of this made at the trial was, as just stated, nothing more than a statement of his opinion or conclusion that a sale and delivery took place at Kansas City.

There are distinctions, which should not be over-

looked, between a delivery of property sufficient to pass the title to the vendee, as against creditors, under the statute of fraudulent conveyances, and a delivery sufficient to show a receipt and acceptance under the Statute of Frauds. It is not all modes of legal delivery which will satisfy the statute of frauds. It is stated in Benjamin on Sales, page 169, that delivery is the act of the seller, and acceptance and receipt the act of the buyer. So, while it may be truthfully said that receipt implies delivery it is not always true that delivery implies receipt. A distinction is noted in Story on Sales, section 279, between a delivery sufficient where the sale is otherwise legal under the Statute of Frauds, as if in writing or earnest money has been paid, and where the sale depends for its legality upon the act of the vendee in receiving and accepting the property.

In view of the foregoing, we cannot see any possible ground upon which the judgment can be sustained, and it is accordingly reversed. All concur.