STATE EX REL. BOGY, RESPONDENT, *v.* BOARD OF COUNTY COMMISSIONERS ET AL., APPELLANTS.

(No. 3,059.)

(Submitted September 25, 1911.  Decided October 9, 1911.)

[117 Pac. 1062.]

*New Counties—Petition for Creation—Number of Signatures— Statutory Construction.*

1. *Held*, that the requirement of section 2, Chapter 112, Laws of 1911 (having to do with the creation of new counties), that the petition therein provided for "shall be signed by at least one-half of the qualified electors of the proposed new county whose names appear on the official registration books" used at the last preceding general election, refers to those persons only who at the date of signing the petition were qualified electors; and that therefore defendant board of county commissioners, in arriving at the total number of electors, signatures of at least one-half of whom were

necessary to move the board to order an election, erroneously counted those whose names might properly have been canceled by the registry agent under section 476, Revised Codes, because of death, removal, etc., since the last general election.

*Appeal from District Court, Lewis & Clark County; J. M. Clements, Judge.*

Action by the state, on the relation of L. V. Bogy, to compel the board of commissioners of Chouteau county to submit the question of the creation of the new county of Blaine to the electors, under Chapter 112 of the Laws of 1911. Relator had judgment directing a writ of mandate to issue as prayed, and defendants appeal. Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. S. Towner,* Assistant Attorney General, submitted a brief in behalf of Appellants. *Mr. Towner* argued the cause orally.

The respondents contend that the board of county commissioners should have eliminated from the registration list the names of 143 persons who were either dead or permanently removed from the county at the time of consideration of said petition. They argue that it is not a fair interpretation of this law to require a percentage of a list of persons, a portion of whom may have died or removed from the county. "It is within the power of the legislature to require more than the majority of the electors to petition, before an election shall be called, for the relocation of a county seat, and to define who are to be considered legal petitioners." (*State* v. *Board of County Commrs.,* 31 Kan. 462, 2 Pac. 562.) As to the general right of a legislature to prescribe a rule, see *Wilson* v. *Bartlett,* 7 Idaho, 271, 62 Pac. 417; *Roesch* v. *Henry,* 54 Or. 230, 103 Pac. 441; *Luce* v. *Fensler,* 85 Iowa, 603. 52 N. W. 517; *Williamson* v. *Russey,* 73 Ark. 270, 84 S. W. 229. See, also, *State ex rel. Stringfellow* v. *Board,* 42 Mont. 62, 111 Pac. 144. It was clearly the intention of the legislature by the Act in question to fix the number of names that must appear as signers to the petition for the division of a county. This number is fixed at not less than fifty per cent of the names on the last

registration list.    It is immaterial whether this list is a correct or incorrect list of voters.    It may or may not be correct as a list of voters; nevertheless it is the official list designated by the legislature which must be used by the county commissioners in determining and ascertaining the number of signers to the petition to give the board jurisdiction to act further in the matter.    The assessment list or the road tax list might have been designated as it is in some states.    "It is a rule, for which there is an abundance of authority, that the mere fact that a certain construction of a statute will cause inconvenience, or failure of justice, will not affect the judicial determination of a case involving such a construction."    (36 Cyc. 1111, and cases cited.) In support of the general proposition that the legislature has the power to define who are to be considered legal petitioners, we cite the following authorities: *State* v. *Board,* 31 Kan. 464, 2 Pac. 562; *Loomis* v. *Bailey,* 45 Iowa, 400; *Luce* v. *Fensler,* 85 Iowa, 596, 52 N. W. 517; *Duffees* v. *Sherman,* 48 Iowa, 291; *Williamson* v. *Russey,* 73 Ark. 270, 84 S. W. 229; *La Londe* v. *Board of Supervisors,* 80 Wis. 380, 49 N. W. 960; *State ex rel. Hawley* v. *County Board,* 88 Wis. 355, 60 N. W. 266; *State ex rel. Lewis* v. *Eggleston,* 34 Kan. 714, 10 Pac. 3; *State* v. *Barton,* 58 Kan. 709, 51 Pac. 218.

In behalf of Respondent, *Messrs. Gunn & Hall* submitted a brief.    *Mr. E. M. Hall* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for *mandamus.*    On May 22, 1911, there was presented to the board of commissioners of Chouteau county a petition asking for the creation of a new county, to be named Blaine, out of territory within the boundaries of Chouteau county described in the petition.    The proceeding thus sought to be initiated is authorized by an Act of the last legislative assembly providing a uniform mode for the "creation, organization and classification of new counties, for locating the county seats," and for other purposes incidental and necessary to accomplish the

main purpose of the legislation.   (Laws 1911, Chap. 112, p. 205.)
The petition contained a statement of the facts necessary to
confer jurisdiction upon the board and require it to proceed.   It
purported to bear the signatures of more than one-half of the
qualified electors of the proposed new county whose names
appeared on the official registry books used at the last preceding
general election held therein, as required by the statute, and
was properly verified by the affidavits of three qualified electors
and taxpayers.   By order of the board duly made. notice was
published fixing the hearing for June 11.   The number of signa-
tures to the petition was 681.   Prior to its formal presentation
to the board, however, written requests for leave to withdraw
their signatures were filed with the board by forty of the original
signers.   During the course of the hearing, which was adjourned
from time to time until July 1, the board struck off the names
of those who had requested to withdraw, the number of signa-
tures being thus reduced to 641.   None of the facts stated in the
petition or attached affidavits were controverted by anyone.   At
the hearing it appeared that there were upon the official register
used at the last preceding general election a total of 1,411
names.   Counsel representing the petitioners introduced evi-
dence showing that of this number many had either died or
permanently removed from the county, or had registered in two
different precincts.   This evidence was in the form of sworn
testimony of witnesses who had personal knowledge of the per-
sons who bore the names in question, and was not controverted.
At the conclusion of the hearing the board found all of the facts
as stated in the petition; that all of the 641 signatures were of
electors entitled to join in the petition; that of the total of 1,411
names on the register, 143 did not, because of deaths, permanent
removal from the county, *etc.,* represent qualified electors, and
that, deducting these names from the list, 641 represented more
than one-half of the remainder.   It nevertheless held the peti-
tion insufficient and refused to proceed because it did not bear
the signatures of at least one-half of the total number of 1,411.
Thereupon the relator, a taxpayer and resident of the proposed
county of Blaine, instituted this proceeding.   The district court

was of the opinion that from the facts found by the board, and stated above, the petition was sufficient, and rendered judgment directing the writ to issue.   The defendants have appealed.

Section 1 of the Act referred to defines the circumstances under which a new county may be created either out of territory within a county already existing, or out of territory included in two or more adjoining counties.

Section 2 confers the power to create the new county upon the board of commissioners of the county out of which the territory of the proposed new county is to be taken; or, if it is the purpose to include in the proposed county, territory from two or more counties, upon the board of the county from which the greatest area of territory is to be taken.   The proceeding must be initiated by petition.   ''Such petition shall be signed by at least one-half of the qualified electors of the proposed new county, whose names appear on the official registration books used at the general election held therein last preceding the presentation of said petition to the board of county commissioners as herein provided;   *   *   *   .''   If territory is to be taken from more than one county, separate petitions must be presented by the electors from such portions of territory so to be taken. There must be attached to each petition the affidavits of three qualified electors and taxpayers of the territory from which it comes, verifying the genuineness of the signatures and also the truth of the statements recited.   The course of procedure to be pursued by the board is indicated, and at the hearing, after notice, the board may take the petition as *prima facie* evidence of the jurisdictional facts, or it may hear evidence; or, upon proper petition by qualified electors from a definite portion of territory, may change the boundaries of the proposed county so as to exclude such portion of territory.   If upon the hearing the facts are found justifying action by the board, it must by resolution make a record of them.

Section 3 then makes it incumbent upon the board to divide the designated territory into townships, road and school districts, and to designate election precincts, and thereupon to proclaim and hold an election.   If upon canvassing the returns it is found

that the result is in favor of the new county, as required by section 4, the board shall by resolution declare the county organized. The election must include the selection of a county seat and the necessary county and township officers.

Sections 5 to 15, inclusive, embody provisions directing how the internal affairs of the county are to be adjusted by the newly elected officers.

From this brief *résumé* of the provisions of the Act, it is apparent that it was the duty of the defendant board to proceed to proclaim and hold the election, if the number of signatures to the petition was sufficient under the requirement of section 2; for, all the other jurisdictional facts having been found in favor of the petitioners, the board had no discretion but to proceed under the provisions of section 3. This is conceded by the attorney general, but he argues that it was the clear intent of the legislature, as expressed in the language, *supra,* from section 2, that the number of signatures must be at least one-half of the number of names of electors as they appear upon the registration books, without regard to the number of them which might have been canceled by the registry agent under section 467, Revised **[1]** Codes, because of death, removal, *etc.* Counsel for relator contend that the requirement refers to those qualified electors only whose names are properly on the list, and hence that the board having found that 143 of the names on the list do not represent qualified electors, it should have deducted these from the total sum. With this latter contention we agree. It is clear from the language employed that the signers of such a petition shall at the time of signing possess two qualifications, *viz.,* they must be qualified electors of the proposed new county, and their names must be found upon the registration books. Though a name is found upon the list of registered electors, it does not follow necessarily that the person who was registered under that name is therefore a qualified elector. At best, if he is living, he is only *prima facie* such, even if he retains his residence. Death or a disqualification then existing or thereafter wrought by change of residence or other cause, removes him from the class of electors. Therefore, to give significance to the expression

"qualified electors of the proposed new county," it must be understood as a limitation upon the number of those who only may be taken into account, notwithstanding the number of names appearing on the list. In other words, the number of names upon the list is not the criterion, but the number of names of those who at the date of signing the petition are qualified electors. That this is the correct view is made manifest by the duties which must be discharged by the board in determining the sufficiency of the petition. While it must be accepted as *prima facie* evidence of the truth of everything contained in it, on final consideration of it the board must hear the petitioners and any opponents and receive evidence offered to establish or controvert the facts set forth in it. It must thereupon determine the truth of all jurisdictional facts, among others, whether it "contains the genuine signatures of at least one-half of the qualified electors of the proposed new county as herein required." (Section 2.) If the facts stated, among which is the fact that the signers are qualified electors of the proposed new county, may be controverted, it may be shown that any signer is not such an elector, even though his name is on the list. Hence the petitioners may show that some of the names on the list are not those of qualified electors.

It is argued by the attorney general that this conclusion recognizes, as lodged in the board, the power to cancel from the registration books the names of deceased or disqualified electors, whereas by the statute (section 476, *supra*) it is lodged exclusively in the registry agent, to be exercised during the period of registration only. We do not agree with this. The board does not remove any name. It merely ascertains from the list the names of those who are qualified electors, in order that it may know that the petition bears the signatures of the requisite number.

A number of cases are cited by counsel in support of their respective contentions, including *State ex rel. Stringfellow* v. *Board of Commissioners*, 42 Mont. 62, 111 Pac. 144; but the provisions of the statutes examined in them differ materially

from those under consideration here.   Hence they have not substantially aided us in reaching a conclusion.

The judgment is affirmed.

*'Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.