STATE EX REL. ARTHURS, APPELLANT, *v.* BOARD OF COUNTY COMMISSIONERS ET AL., RESPONDENTS.

(No. 3,083.)

(Submitted October 30, 1911. Decided November 8, 1911.)|

[118 Pac. 804.]

*New Counties—Elimination of Territory—Petition—Sufficiency —Contents—Board of County Commissioners—Presumptions —Judicial Notice—Mandamus—Defenses.*

New Counties—Elimination of Territory—Moving Papers—To be Read Together.
　　1.   The proceedings prescribed by Chapter 112, Laws of 1911, page 205, for the creation of a new county are an entirety; hence the board of county commissioners, intrusted with the duty of passing upon the sufficiency of the petition required to be filed to effect the elimination of certain territory from the confines of a proposed new county, must read it in connection with the original petition looking to the creation of such county; and if thus, by any fair intendment, a description of the territory sought to be eliminated may be arrived at, it is the duty of the board to give the intention of the petitioners full force and effect.

Same—Board of County Commissioners—Presumptions.
　　2.   A board of county commissioners, in passing upon the sufficiency of a description of territory sought to be eliminated from a proposed new county, under the provisions of Chapter 112, Laws of 1911, is presumed to understand the method pursued by the government in its surveys of public land, and is chargeable with knowledge of the territory included within its own county as well as its boundaries.

Same—Judicial Notice—County Boundaries.
　　3.   Courts will take judicial notice of the boundaries of a county.

Same—*Mandamus*—Demurrer—Motion to Quash—Affidavit Taken as True.
　　4.   As against a general demurrer and motion to quash, the facts alleged in the affidavit for a writ of mandate will, for the purposes

of an appeal from an order dismissing the proceedings, be taken as true.

Same—Petition for Elimination of Territory—Affidavit.
  5.  A recital in the affidavit verifying a petition asking for the elimination of certain territory from the area included within the boundaries of a proposed new county, that fifty per cent of the qualified electors of the territory sought to be withdrawn had signed such petition, was a sufficient *prima facie* showing of that fact.

Same—Petition for Elimination of Territory—Contents.
  6.  The petition required by Chapter 112, Laws of 1911, to be filed to effect an elimination of certain territory from the area included within the boundaries of a proposed new county, must contain a description of the territory sought to be eliminated, and a prayer for the relief demanded; the other facts, *i. e.,* (a) that the territory asked to be withdrawn lies within and contiguous to the boundary lines of the new as well as the old county, (b) that the petition is signed by at least fifty per cent of the qualified electors of such territory, and (c) that it lies entirely within the old county, may be made to appear by evidence upon the hearing, without being specially alleged.

Same—*Mandamus*—What not Defense.
  7.  The performance of a duty resulting from an office and specially enjoined by law may be compelled by *mandamus,* even though the time within which it should have been performed has elapsed.

Same.
  8.  That the defendant board of county commissioners, in erroneously rejecting a petition seeking the elimination of certain territory from the area of a proposed new county as insufficient, acted in a *quasi*-judicial capacity, is not any defense to the issuance of *mandamus.* The writ lies to correct a refusal to proceed in the hearing of a matter, based upon the erroneous determination of a preliminary objection.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

MANDAMUS by the state, on the relation of John A. Arthurs, against the board of county commissioners of Chouteau county and the members thereof.  General demurrer to alternative writ sustained, and proceeding dismissed, and relator appeals.  Reversed.

*Messrs. Walsh & Nolan, Mr. F. E. Stranahan,* and *Mr. H. S. McGinley,* for Appellant, submitted a brief.  *Messrs. Walsh* and *Stranahan* argued the cause orally.

The respondent board refused to entertain the petition or consider it, and rejected it without consideration, claiming that it was insufficient in material parts, and that by reason of these

defects it was without jurisdiction or authority to act. This allegation means that the board said that they have no jurisdicdiction in this matter, and as the petition is fatally defective, so fatally defective as to confer no jurisdiction upon them, it is contended that by this action the board considered the petition and acted judicially. It exercised discretionary power which cannot be reviewed by *mandamus*. This position is untenable and made so by the decisions of this court. In the case of *State ex rel. Mathews* v. *Eddy,* 10 Mont. 311, 25 Pac. 1032, the court said: "The writ of *mandamus* lies, as held in *Ex parte Parker,* 120 U. S. 737, 7 Sup. Ct. 767, 30 L. Ed. 818, where an inferior court refuses to take jurisdiction when by law it ought to do so, or where, having obtained jurisdiction, it refused to proceed in its exercise." (See, also, *Raleigh* v. *District Court,* 24 Mont. 306, 81 Am. St. Rep. 431, 61 Pac. 991; *State* v. *Loud,* 24 Mont. 428, 62 Pac. 497; *State ex rel. Stringfellow* v. *Board,* 42 Mont. 62, 111 Pac. 144.) It is claimed, however, that this latter case can be easily distinguished from the one under consideration; that in that case the commissioners determined that the petition was sufficient, and this being so it was incumbent upon them to give it its full legal effect, but that in the case now before us the board considered the petition and found it insufficient, and in so doing they exercised a discretion which cannot be reviewed by *mandamus*. The distinction is without difference and without merit. In the one case they entertain jurisdiction, and find that a sufficient number of signers did not affix their names. They found against the requirements of the law. In this case they found that the petition was insufficient, and, therefore, refused to consider it. If legal, the petition was sufficient, so that it became their duty to consider it. We fail to see in principle any difference in the two cases. In the case before us, the board refused to go into the merits of the petition—an erroneous construction of a question of law. It erroneously decided, as we contend, a question of law—the insufficiency of the petition to confer jurisdiction—and upon such erroneous construction refused to go into the merits of the

case, and, as was said in the *Raleigh Case, supra, "mandamus* will lie to compel it under these circumstances to proceed."

It is claimed that the board is not in a position to perform the acts sought, by reason of the expiration of time for the hearing, as prescribed by law. It is contended that, having adjourned *sine die,* the board cannot reconvene, and, as the statute prescribes the time when the petition should be considered, and that time having elapsed, it is without authority now to act in the premises. The right to reconvene a board after having adjourned *sine die* is not a debatable question. (See *State* v. *Canvassers Choteau Co.,* 13 Mont. 23, 31 Pac. 879.) It is no objection to the issuance of the writ that the time for the performance of the duty has passed, as it is only in case of default in performance at this time that the writ can issue. (*McConihe* v. *State,* 17 Fla. 238; *People* v. *Fairbury,* 51 Ill. 149; *State* v. *Franklin Co.,* 35 Ohio St. 458.)

We contend that the respondent board is estopped from claiming that it is too late to remedy its own mistake. It cannot be heard in this proceeding to take advantage of its own wrong. The difficulty which it now suggests is the result of its own dereliction, and it will not be allowed now to say that because of having adjourned without acting and within the time provided for, it cannot now be compelled to do what the law said it should do before adjourning. (*First Nat. Bank* v. *Arthur,* 12 Colo. App. 90, 54 Pac. 1107; *Tazewell* v. *Herman,* 108 Va. 416, 60 S. E. 767, 61 S. E. 752.)

Having in mind the fact that the statute requires no particular form of petition and does not prescribe what such petition shall contain, we submit that the recitals and statements in the petition and affidavit accompanying it are sufficiently specific so as to advise the board as to what is sought. It is a rule of law that jurisdictional facts only should be stated. Such other facts as must exist in order to authorize action through their existence may be shown by outside evidence. (*Jolly* v. *Foltz,* 34 Cal. 321; *Van Dusen* v. *Sweet,* 51 N. Y. 378; Black on Judgments, sec. 282; *Thompson* v. *Trowe,* 82 Minn. 471, 85 N. W. 169.) As in effect

sustaining our contention as to the sufficiency of the petition in the present case, we refer to the following cases: *McKinney* v. *Board of Commrs.*, 26 Fla. 267, 4 South. 855; *Foss* v. *Commissioners of Rousseau Co.*, 93 Minn. 238, 101 N. W. 71; *Hall* v. *McDonald*, 171 Ind. 9, 85 N. E. 709.

*Mr. Albert J. Galen,* Attorney General, *Mr. W. S. Towner,* Assistant Attorney General, and *Mr. O. W. McConnell,* for Respondents, submitted a brief. *Messrs. Towner* and *McConnell* argued the cause orally.

*Mandamus* does not lie to compel the board to consider a petition which the law says cannot be considered after the expiration of a specified time. Where the performance of an act is impossible, or where, if granted, it would be useless and unavailing, *mandamus* will not run. (Spelling on Injunction, sec. 1377, and cases cited.) It is not now within the power of the board of county commissioners to do the act sought to be performed by the writ of mandate, and "the writ will be refused where it is not within the power of the defendant to do the act sought to be coerced." (Spelling on Injunction, sec. 1439; *Commissioners of Duval County* v. *City of Jacksonville,* 36 Fla. 196, 18 South. 339, 29 L. R. A. 416; *Stacy* v. *Hammond,* 96 Ga. 125, 23 S. E. 77.) The respondents must have the right and the power by law to do the acts which the relator seeks to have done. If they have not such right or power by law, *mandamus* will not issue to compel them to do such acts. (*People* v. *Commissioners of Cook County,* 176 Ill. 576, 52 N. E. 336.) There are many instances in which the time for the doing of a particular act is fixed and limited, and after the expiration of that time the officer has no further power under the law to do the act, and in such instances a writ of mandate will not lie to compel the performance of such act. (See *Lurtz* v. *Hardcastle,* 1 Marv. (Del.) 450, 41 Atl. 194; *Stacy* v. *Hammond,* 96 Ga. 125, 23 S. E. 77; *State* v. *Archibald,* 43 Minn. 328, 45 N. W. 606.)

The act sought to be coerced by the writ of mandate in this case is a judicial one, and *mandamus* will not lie to control the discretion of the board of county commissioners. (*Hetzel* v. *Board of Co. Commrs.*, 8 Nev. 359.) Even though the petition was sufficient, the board has passed upon and has held it insufficient, and the writ of *mandamus* is not the proper remedy to correct the ruling or holding. (Merrill on Mandamus, sec. 42; *Ex parte Burtis*, 103 U. S. 238, 26 L. Ed. 392.) It is immaterial whether, in passing upon the petition for the withdrawal of territory, they decided the matter correctly or incorrectly. They may have decided the question wrongly and still their decision cannot be corrected by the writ of mandate, for, "although the court may have erred, yet it regularly pursued its authority. The right to hear and determine necessarily carries with it the power to decide wrong as well as right." (*State ex rel. Baker* v. *District Court*, 24 Mont. 239, 61 Pac. 309.) The board, in considering the petition, found that it was insufficient, and, not being sufficient to confer jurisdiction upon the board, they took no further action upon it. They exercised their discretion and investigated and found the petition insufficient. "*Mandamus* will not lie to review or control this discretion and decision." (*State* v. *Rickards*, 16 Mont. 145, 50 Am. St. Rep. 476, 40 Pac. 210, 28 L. R. A. 298; *State* v. *Smith*, 23 Mont. 44, 57 Pac. 449.) "*Mandamus* will not lie to compel a person to undo an act which the law has compelled him to do and he has done." (*Maxwell* v. *Burton*, 2 Utah, 595.) "A writ of mandate will not issue to compel an inferior tribunal to reverse its decision when it has acted in a judicial capacity on a question properly brought before it." (*Chase* v. *Blackstone Canal Co.*, 27 Mass. 244.) "*Mandamus* does not lie to compel officers exercising judicial functions to set aside or vacate a decision." (*State* v. *Churchill*, 37 Neb. 702, 56 N. W. 484.) "Where the inferior tribunal has refused to proceed because of the want of jurisdiction, *mandamus* will not lie." (High on Extraordinary Legal Remedies, sec. 252.)

It is apparent that the petition for removal is wholly insufficient. The description of the territory sought to be withdrawn is indefinite. It does not mention the meridian or the county, or the state in which the land sought to be withdrawn is located. It fails to state that the territory is wholly within any county, or that it is contiguous to the proposed Hill county, or lies wholly within the old county. The description includes territory in other counties. If a deed were given of property described as this territory is described, it would be too uncertain and indefinite and would be void. A deed is void for uncertainty where the description of the property conveyed gives the number of subdivisions of the sections, but fails to name township, range or county. (*Fuller* v. *Fellows,* 30 Ark. 657.)

The proceedings under this Act are exclusive in character, and the commissioners can exercise no powers other than those conferred thereby. While it is true that statutes regulating proceedings for the organization and alteration of counties should be liberally construed to give effect to the legislative intent, still where that intent is apparent, the statutory requirements must be strictly complied with. Proceedings of this nature being strictly statutory, it is elementary that before the commissioners have any jurisdiction to act, a petition complying strictly with the statutory provisions and requirements must be presented. (*La Londe* v. *Board,* 80 Wis. 380, 49 N. W. 960; *Rickey* v. *Williams,* 8 Wash. 479, 36 Pac. 480.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On June 19, 1911, there was presented to the board of county commissioners of Chouteau county a petition for the creation of a new county, to be known as Hill county, from a portion of Chouteau county. So far as disclosed by this record, that petition was in due form, and met the requirements of Chapter 112, Laws of 1911. The board thereupon by order designated July 17 as the time for hearing the petition and any objections thereto. Prior to the last-named date, there was filed with the

board a counter-petition, asking that certain territory included within the boundaries of the proposed county of Hill be allowed to remain in Chouteau county. Omitting the formal portions, that counter-petition reads:

"We, the undersigned, voters of * * * in Chouteau county, Montana, do respectfully petition that Townships 29 to 37 North, inclusive, and Ranges 1 to 10 East, inclusive, be allowed to remain in Chouteau county, as is provided for in Substitute for Senate Bill No. 35, 1911 Session Laws."

This counter-petition was signed by a large number of people, and following the signature was this form of verification:

"State of Montana,  ⎫
                    ⎬ ss.
"County of Chouteau, ⎭

"John McDowall, John Laird and John A. Arthurs, being first duly sworn, upon oath, each for himself, deposes and says: That he is a qualified elector and taxpayer within the county of Chouteau within the section of said county comprised within Townships 29 to 37 North, inclusive, and Ranges 1 to 10 East, inclusive; that they have each read the foregoing petitions asking that Townships 29 to 37 North, inclusive, and Ranges 1 to 10 East, inclusive, be allowed to remain in Chouteau county, and that they have examined the signatures thereto affixed, and that they each do believe that it is signed by at least one-half of the electors within the said territory comprised within Townships 29 to 37 North, inclusive, and Ranges 1 to 10 East, inclusive, in said county of Chouteau, and that the signatures thereto affixed are genuine, and that each of such persons so signing was a qualified elector of the county of Chouteau at the time of the signing thereof."

"Subscribed and sworn to," etc.

On July 24, the board rejected this counter-petition, approved the petition for the creation of Hill county, ordered an election for November 20, and on July 31 adjourned. This proceeding was then instituted by John A. Arthurs, a resident taxpayer of the territory described in the counter-petition, and a party

beneficially interested, for a writ of mandate. The affidavit for the writ sets forth the history above, and alleges that the counter-petition was signed by more than fifty per cent of the qualified electors residing within the territory described in the counter-petition; that the territory sought to be retained in Chouteau county lies contiguous to the boundary line of the proposed Hill county and the boundary line of Chouteau county, and is entirely within the old county of Chouteau. It is then alleged that the commissioners rejected the counter-petition without considering the same, claiming that it was "insufficient in material particulars and by reason of defects [therein] * * * the said board was without jurisdiction to consider same." An alternative writ was issued, and upon the return the board interposed a general demurrer to the affidavit and a motion to quash the writ. The demurrer and motion were sustained, and a judgment entered, quashing the alternative writ and dismissing the proceedings. From that judgment, this appeal is prosecuted. For want of a better name, and to distinguish the petition to withdraw territory from the petition for the creation of the new county, we have designated the withdrawal petition as a counter-petition.

The proceedings for the creation of a new county under Chapter 112, above, are initiated by filing with the board of county commissioners a petition, describing the territory sought to be included in the new county. Notice is then given that such petition has been filed, and a time is designated for a hearing, which time must not be more than thirty days from the date when such petition was filed. The Act further provides: "At the time fixed for said hearing the board of commissioners shall proceed to hear the petitioners and any opponents and may adjourn such hearing from time to time, not exceeding fourteen days in all." And again: "On the final hearing said board of county commissioners must, upon petition of not less than fifty per cent of the qualified electors of any territory lying within said proposed new county and contiguous to the boundary line of the said proposed new county and of the old

county from which such territory is proposed to be taken, and lying entirely within a single old county, and described in said petition, asking that said territory be not included within the proposed new county, make such changes in the proposed boundaries as will exclude such territory from such new county, and shall establish and define such boundaries.''

If this counter-petition meets the requirements of the statute, the board does not have any discretionary power, but must exclude the territory so sought to be withdrawn, and reform the lines of the proposed new county accordingly. So that the only question, apparently, which can arise before the board upon the counter-petition is: Does it in fact meet the requirements of the statute?

1. It is insisted that the counter-petition presented to the commissioners in this instance was and is insufficient, in that: "It does not mention the meridian or the county, or the state in which the land sought to be withdrawn is located. It fails to state that the territory is wholly within any county, or that it is contiguous to the proposed Hill county, or lies wholly within the old county.''

The presentation of a counter-petition under this Act presupposes that an original petition has been filed for the creation of a new county, in which original petition the territory to be included in the new county is described; and such original petition had been filed with and was before the board at the time this counter-petition was presented. The proceeding for the [1] creation of a new county is an entirety, and includes all steps taken from the time the original petition is filed, until a copy of the resolution declaring the result of the election is presented to the secretary of state. Chapter 112, above, has one main purpose running through it, *viz.,* to permit the people directly interested to determine for themselves whether a new county shall be created, and what territory shall be included within the new county, if it is created, and the statute should be given a liberal construction, to the end that the will of the people affected may be carried out. The board of county com-

.missioners is not a court. It is distinctly the people's forum, where the layman can be heard without the interposition of an attorney to represent him. The rigid rules of a court of record have no place in the proceedings of such board. When this counter-petition was presented to the board, which had before it the original petition, describing the boundaries of the proposed new county of Hill, it was the duty of the board to read the counter-petition in connection with the original petition, and determine, if it could, the wishes of the electors who sought to have eliminated certain territory which had been included within the new county, as described in the petition for its creation; and, if by any fair intendment the intention of the signers of the counter-petition could be determined, it was the duty of the board to give such intention full force and effect; otherwise the very purpose of the statute would be defeated.

It is not the province of the board to ask whether the counter-petition is drawn with all the technical niceties which might be expected from one learned in the law and accustomed to drafting legal documents; but rather it should ask whether it is possible for the board to take the counter-petition, in connection with the other papers and proceedings in the matter, and determine the will of those who signed it. It will be presumed that the members of the board understand the method [2] pursued by the government in its surveys of public land. The board is chargeable with knowledge of the territory included within Chouteau county as now constituted. This court [3] takes judicial notice of the fact that the Montana principal meridian forms the western boundary line of Chouteau county, and that the north line of Township 37 North is the international boundary line, and the north line of Chouteau county; and the board will be held to know these facts also. (*Hoyt* v. *Russell,* 117 U. S. 401, 6 Sup. Ct. 881, 29 L. Ed. 914, reversing *Russell* v. *Hoyt,* 4 Mont. 412, 2 Pac. 25.)

Each of the persons making the verification to this counter-petition swears that he is an elector and taxpayer within Chouteau county, and within the section of said county comprising Townships 29 to 37 North, inclusive, and Ranges 1 to 10 East,

inclusive. By any fair intendment, it must be held that the counter-petition describes the territory sought to be withdrawn, as lying entirely within Chouteau county, not by direct allegation, it is true. It prays that Townships 29 to 37 North, inclusive, and Ranges 1 to 10 East, inclusive, be allowed to remain in Chouteau county. If that territory is not already wholly within Chouteau county, it cannot remain in that county. There cannot be a doubt that the territory sought to be withdrawn from the proposed new county is shown to be entirely within Chouteau county, and therefore within the state of Montana. The only territory within the entire state of Montana which falls within the description given in the counter-petition is comprised within the quadrangle bounded by the Montana principal meridian on the west, the international boundary line on the north, the east line of Range 10 East on the east, and the south line of Township 29 North on the south—the lines connecting points A, B, C, and D on the subjoined map.

It cannot be insisted that the description in the counter-petition shall be more definite and certain than is required in deeds,

mortgages, wills, and like instruments which actually convey property rights. In *McDonald* v. *Payne,* 114 Ind. 359, 16 N. E. 795, the general rule applicable to the description in deeds is stated as follows: ''A deed will not be declared void as long as it is possible, by any reasonable rules of construction, to ascertain from the description found therein what property it was intended to convey''; and, speaking to the same subject, the same court, in *Calton* v. *Lewis,* 119 Ind. 181, 21 N. E. 475, said: ''The inquiry in such a case is, Could a surveyor take the deed and ascertain from an inspection of it where the land was located?'' The deed in question in the last case above contained this description: ''The following described tract or tracts of land lying and being on the waters of Crowder creek in the tenth civil district of Lawrence county in range 5, section 1.'' It will be observed that neither the state nor meridian is mentioned; but the deed was acknowledged in Lawrence county, Tennessee, and plaintiffs alleged that it was situated in that state, and the court held that they were entitled to make proof of that fact, and further said: ''The true rule upon the subject is that, where the description in a deed or mortgage is so uncertain as to afford no reliable clue to a more correct and definite description, as in case there is nothing in the instrument to indicate the state, county, or locality in which the land is situate, it will be held void; but if, taking all the facts which appear upon the face of the instrument, and the legal presumptions which naturally flow from those facts, a true description may be supplied by aid of proper averments and proof, the instrument will be held sufficient. (*Dutch* v. *Boyd,* 81 Ind. 146; *Noland* v. *State,* 115 Ind. 529, 18 N. E. 26.) That part of a deed or contract which relates to the description of the premises should be liberally construed, so as to make the instrument available. (*Hannon* v. *Hilliard,* 101 Ind. 310.) And a court will only declare a deed void for uncertainty when, after resorting to oral proof, it still remains mere matter of conjecture what was intended by the instrument. (*Roehl* v. *Haumesser,* 114 Ind. 311, 15 N. E. 345, and cases cited.)''

In *Garden City Sand Co.* v. *Miller*, 157 Ill. 225, 41 N. E. 753, the court had under consideration a deed by Jos. V. Brown of Chippewa county, Michigan, to Geo. and Theo. Wendell of Mackinac county, Michigan, conveying "fractional section No. 17, Township 39 N., Range 11 West, containing 80.50 acres." The deed did not mention the county or state in which the land was situated, or the meridian from which it was surveyed, but it was acknowledged in Chippewa county, Michigan, and the court held that it was competent for the plaintiff to show by his evidence that the land was in fact in Chippewa county, Michigan, and said: "The evidence in the record shows that the ancestor of these minors was in control of these lands prior to his death, and the guardian had been in control since. These facts, all considered, are sufficient to apply the deed of Brown to the Wendells (and under which possession was taken) to the land described in the patent and in the guardian's deed tendered appellant. Any fact or circumstance by which the mind is convinced as to what tract was intended to be conveyed will be resorted to, instead of treating the description as a patent ambiguity. (*Pursley* v. *Hayes*, 22 Iowa, 11 [92 Am. Dec. 350]; *Mecklem* v. *Blake*, 19 Wis. 419; *Russell* v. *Sweezey*, 22 Mich. 235; *Billings* v. *Kankakee Coal Co.*, 67 Ill. 489; *Atwater* v. *Schenck*, 9 Wis. 151; *Clark* v. *Powers*, 45 Ill. 283.) It was not error to admit in evidence the deed from Brown to George W. Wendell and Theodore Wendell as *prima facie* conveying the lands in controversy."

In *Bryan* v. *Scholl*, 109 Ind. 367, 10 N. E. 107, there was considered a decree of foreclosure, which ordered the sale of certain land in Township 21 North, Range 1 West, but omitted to state that the land was situated in Clinton county, Indiana. In disposing of the matter, the court said: "The foreclosure proceedings were commenced, and the decree rendered, in the Clinton circuit court. No objection was made to the jurisdiction of the court. The mortgage, a copy of which was made part of the complaint in the foreclosure proceedings, described the land as being in Clinton county. The decree and notice de-

scribed the land correctly, except that they did not recite in terms that it was situate in Clinton county, in the state of Indiana. Both the decree and notice did, however, contain the recital that the several tracts of land described were all in 'Township twenty-one (21) North, of Range one (1) West.' The decree on its face directed the sheriff of Clinton county to sell the lands therein described in default of payment of the sum of money found due. It will be presumed, therefore, to say the very least, that the lands were in the state of Indiana, and, if in Indiana, since Clinton county is the only county in the state which contains within its boundaries a township and range answering the description above set out, it conclusively follows from such description that the land was in Clinton county.''

In *Noland* v. *State,* 115 Ind. 529, 18 N. E. 26, there was before the court for consideration a mortgage which did not state that the land encumbered was in any county or state, but the court held that it was not void, and said: ''It was delivered to the auditor of Montgomery county to secure a loan of the common school fund of the state, and it shows upon its face that it was signed and acknowledged in that county by mortgagors residing therein. Taking into consideration the facts, which appear upon the face of the mortgage, that the mortgage was signed and acknowledged in Montgomery county, by residents of that county, and that the law required the auditor to take security on land situate in that county, and the legal presumptions which flow from those facts make the present a case in which a true description may be supplied by the aid of proper averments in the complaint.''

In *Mee* v. *Benedict,* 98 Mich. 260, 39 Am. St. Rep. 543, 57 N. W. 175, 22 L. R. A. 641, there was before the court an instrument in writing which purported to convey an interest in standing timber, but which omitted the name of the state in which the timber was situated; but the court held it not void, and said: ''Pease, the maker of the instrument, had title of record to these lands. Although the acknowledgment was taken

44 Mont.—5

in Chicago, the certificate of the official character of the notary was appended and the paper placed on record in Manistee county, where the lands are situated. This, we think, sufficient evidence to identify the lands sought to be described."

In *Devine* v. *Burleson*, 35 Neb. 238, 52 N. W. 1112, there was before the court the question of the sufficiency of a complaint which described the land involved as "the N. W. $\frac{1}{4}$, section 20, Township 29, Range 14 West." The court held the complaint sufficient, and said: "It is insisted that the description is not sufficiently definite, as neither the meridian, county, nor state is given. The objection is untenable. The description is not defective, for the premises are definitely described. There is no uncertainty as to the lands intended. True, the meridian is omitted, but the courts of this state will take judicial notice of the mode of the general government of surveying public lands, and that there is but one meridian line in this state. We know that there is but one tract of land in this state to which the description contained in the complaint is applicable, and that is situated in Holt county. The premises could be established and identified by a competent surveyor without difficulty."

In *Atwater* v. *Schenck*, 9 Wis. 151, the court considered a bond for a deed which described the land as the "southwest of the southwest quarter of section three, Township ten, North of Range fourteen East, excepting ten acres formerly deeded by John Corwith to Wm. H. Dearborn, out of the southwest corner, containing thirty acres, more or less." The court said: "It will be seen that the county and state are not mentioned. But still the courts will take judicial notice of the government surveys, and the legal subdivisions of the public lands; and, as the parties to this contract all reside in this state, will presume that the land referred to is situated in this state, at least until something to the contrary appears. But, moreover, the plaintiffs in error offered to identify the land by a witness, and also by the deed referred to in the bond. This was competent evidence, and should have been received."

In *Kykendall* v. *Clinton,* 3 Kan. 85, the court had before it a complaint which described the property involved as follows: "The hotel commonly called the Clinton House, in Indianola, Shawnee county, together with all the rooms, houses, garden, lots, etc., used in connection with the same." Speaking of this description the court said: "For aught that we know, the description may have been perfect and accurate. Certain property in Indianola would be as likely to be known as belonging to the Clinton House, as the house itself by that designation. Such a description would be good in a deed, provided the property could be ascertained that was conveyed, and whether it could be so ascertained would be a question of fact, and not of law."

In *Ladnier* v. *Ladnier,* 75 Miss. 777, 23 South. 430, the deed in question omitted the county and state in which the land was situated, but it was held not void for uncertainty, and this doctrine is announced by the courts generally. (*Butler* v. *Davis,* 5 Neb. 521; *Lewis* v. *Seibles,* 65 Miss. 251, 7 Am. St. Rep. 649, 3 South. 652; *Scheuer & Bro.* v. *Kelly,* 121 Ala. 323, 26 South. 4.)

2. It is insisted that the counter-petition does not disclose the facts which it is necessary for the subscribers to prove in order to justify the board in withdrawing the lands mentioned, *viz.:* (a) That the territory sought to be withdrawn is within and contiguous to the boundary line of the new county, and contiguous to the boundary line of the old county; (b) that it is signed by at least fifty per cent of the qualified electors of the territory sought to be withdrawn; and (c) that the territory sought to be withdrawn lies entirely within Chouteau county.

(1) It does not appear affirmatively from the counter-petition that this territory sought to be withdrawn lies within and is contiguous to the boundary line of the proposed new county, and contiguous to the boundary line of the old county. It is alleged in the affidavit for this writ that such are the facts, [4] and for the purpose of this appeal those allegations are to be taken as true against the demurrer and motion to quash. If

the original petition for the creation of the new county contains a particular description of the boundaries of that proposed county as required by law, then a reference to that petition would disclose at once these facts, which are taken to be true.

(2) While it does not appear from the face of the counter-petition that it is signed by at least fifty per cent of the qualified electors of the territory sought to be withdrawn, this fact is [5] recited in the affidavit verifying the counter-petition, and this is sufficient *prima facie* showing of that fact. (*State ex rel. Bogy* v. *Board of County Commissioners,* 43 Mont. 533, 117 Pac. 1062.)

(3) As intimated above, this court takes judicial notice of the fact that the lands described in the counter-petition lie entirely within Chouteau county.

But is it necessary that the counter-petition recite these facts? The statute does not require that such withdrawal petition assume any particular form, and neither does it in terms demand that it contain any particular matter, save the prayer for the [6] relief sought. It is, however, clearly implied that it shall contain a description of the territory sought to be withdrawn, but beyond this it does not go. That the other facts may be made to appear by evidence is clearly indicated.

Our attention has not been directed to any decided case upon the particular character of petition here involved, but analogous cases may be found, wherein petitions have been considered, as, for instance, petitions for laying out roads, removing county seats, calling local option elections, and the like, and there is not any difference in principle between them and a counter-petition presented under this statute of ours. The courts are not in harmony in their decisions as to whether such petitions shall recite all the facts necessary to be proved, but the decided weight of authority is to the effect that such recitals are not necessary, unless required by the statute itself. The statute of California, relating to laying out public highways, provides that "any ten freeholders who will be accommodated by the proposed road, two of whom must be residents of the road dis-

trict wherein any part of the proposed road is situated and who are taxable therein for road purposes, may petition in writing," etc.   (Sec. 2681, California Pol. Code.)   Section 2682 provides: "The petition must set forth the general route of the road * * * and the names of the persons over whose land the same is to run.  *  *  *  "   The question arose as to whether, in addition to the facts required to be stated by section 2682 the petition should also state that it was signed by ten freeholders who would be accommodated by the proposed road, and that two of the signers were resident taxpayers of the district wherein any part of the proposed road is situated.   In disposing of the question, the court, in *Humboldt County* v. *Dinsmore,* 75 Cal. 604, 17 Pac. 710, said: "It will be perceived at a glance that the requirements for a proper petition under the statute do not include an allegation that the signing petitioners are ten freeholders of the road district, and taxable therein for road purposes, wherein the proposed road is to be constructed. This was something, therefore, which the board had the jurisdiction to determine as a fact on the hearing of the matter, from the evidence before them, irrespective of the question as to what the petition may have averred."   Under similar statutory provisions, the same result was reached in *Hall* v. *McDonald,* 171 Ind. 9, 85 N. E. 707, where the court said: "In proceedings to establish or vacate highways in this state, the statutes have uniformly required that the petition should be signed by 'twelve freeholders of the county, six of whom shall reside in the immediate neighborhood of the highway proposed to be located,' and it has been held that it was not necessary to the sufficiency of the petition that said facts be alleged herein."   And to the same effect are *Willis* v. *Sproule,* 13 Kan. 257; *Bewley* v. *Graves,* 17 Or. 274, 20 Pac. 322; *Snoddy* v. *County of Pettis,* 45 Mo. 361; *Keyes* v. *Tait,* 19 Iowa, 123; *Commissioners* v. *Ellwood,* 193 Ill. 304, 61 N. E. 1033.   The same rule is applied to petitions for the relocation of county seats (*Mode* v. *Baisley,* 143 Ind. 306, 42 N. E. 727); to petitions for local option elections (*Steele* v. *State,* 19 Tex. App. 425; *State*

v. *Smith,* 38 Mo. App. 618) ; and to petitions for the issue of bonds (*Cleveland* v. *City Council of Spartanburg,* 54 S. C. 83, 31 S. E. 871).

Since this counter-petition recites all the facts which the statute requires it to recite, we think it is sufficient, and that the additional facts may be shown upon the hearing without being specially alleged.

3. It is next urged that *mandamus* is not an appropriate remedy: (A) Because the time within which the board could consider such counter-petition has expired. (B) Because the act of the board in rejecting the counter-petition as insufficient was judicial or *quasi*-judicial in its nature.

(A) Chapter 112, above, apparently contemplates that the board shall determine all matters up to and including the order for the election within forty-four days from the date upon which the original petition was filed. Since we have determined that the counter-petition is sufficient, it was and now is the duty of the commissioners to hear evidence in support of it, and, if the necessary facts appear, to so far reform the lines of the proposed [7] new county as to exclude this territory. This duty is absolute—one resulting from the office and specifically enjoined by law. To say that the courts are helpless to compel performance of such a duty, merely because the time within which the duty should have been performed has elapsed, is tantamount to holding that a public official, by delaying action until the time designated by law for action has expired, may defeat the will of the people as expressed by the legislature, and that there is not any redress for those who are injured by such nonaction. Cases may arise where the courts are not able to render any adequate assistance, but this is not one of them. The board will not be heard to say that it is too late to do that which it ought to have done at the proper time, or to take advantage of its own mistake to deprive these counter-petitioners of a right which the law secures to them. (*State* v. *Canvassers of Choteau County,* 13 Mont. 23, 31 Pac. 879; High on Extraordinary Legal Remedies, 14; *Tazewell* v. *Herman,* 108 Va. 416, 60 S. E.

767, 61 S. E. 752; *Bank* v. *Arthur,* 12 Colo. App. 90, 54 Pac. 1107; *State* v. *Philips,* 96 Mo. 570, 10 S. W. 182.)

(B) Assuming that the board acted as a *quasi*-judicial body, still we think this question is set at rest in this state by the decision in *Raleigh* v. *District Court,* 24 Mont. 306, 81 Am. St. Rep. 431, 61 Pac. 991, in which it is said: "Refusal to take [8] jurisdiction, or, after having acquired jurisdiction, refusal to proceed in its regular exercise, or the erroneous determination of a preliminary question of law, upon which the court refused to examine the merits, will be corrected by *mandamus.* The rule that *mandamus* will not issue to control discretion or to revise judicial action, but only to direct the court to act in such matter, is to be understood as applying only to the act to be commanded by the writ, and not to the decision of purely preliminary questions of law only. If the rule applied to such preliminary questions, then, to use the language of Mr. Hayne, in section 323 of his treatise on New Trial and Appeal, 'no writ of *mandamus* could ever issue, and the machinery provided by the Code for trying such questions would be useless. The distinction above stated applies not only where the act to be performed is purely ministerial, such as the signature of a warrant, the payment of a claim, or the like, but also where it is judicial in its nature.' " The court also quoted with approval from *Castello* v. *Circuit Court,* 28 Mo. 259, the following: "Where an inferior tribunal declines to hear a cause upon what is termed a preliminary objection, and that objection is purely a matter of law, a *mandamus* will go, if the inferior court has misconstrued the law." In *State ex rel. Stringfellow* v. *Board of County Commissioners,* 42 Mont. 62, 111 Pac. 144, a similar question was before us. In that case, the board erroneously determined that a petition for the removal of a county seat was insufficient, because it was not signed by a majority of the taxpayers of Chouteau county. *Mandamus* issued to compel the board to give to the petition its full legal effect. We are unable to make any distinction between that case and the present one, so far as the principle involved is concerned.

The judgment of the district court is reversed, and the cause is remanded, with directions to vacate the order sustaining the demurrer and motion to quash, and to overrule the same.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

(Submitted October 30, 1911. Decided November 8, 1911.)